Elinor NELSON, et al.

v.

Donald REGAN, et al.

Civ. No. N82–173.

United States District Court,
D. Connecticut.

Jan. 14, 1983.

Michael Sheehan, N.H. Legal Assistance, New Haven, Conn., Jo Anne Miner, Danielson, Conn., for plaintiffs.

Joseph X. DuMond, Asst. Atty. Gen., Hartford, Conn., for defendant Manning.

Linda Lager, New Haven, Conn., John P. McAllister, Trial Atty., Tax Div., Dept. of Justice, Washington, D.C., for defendant Regan.

RULING ON FEDERAL DEFENDANTS' MOTION TO DISMISS, PLAINTIFFS' MOTION FOR CLASS CERTIFICATION AND CROSS MOTIONS FOR SUMMARY JUDGMENT

ELLEN B. BURNS, District Judge.

This case involves the federal-state "intercept" program authorized by the Omnibus Budget Reconciliation Act of 1981, Pub.L. No. 97–35, §§ 2331, 2332, 95 Stat. 860–63, under which federal income tax refunds may be transferred to the state to the extent of the taxpayer's past-due support obligations. The implementation of this program in Connecticut is described in this Court's June 4, 1982, ruling on plaintiffs' motion for a preliminary injunction.

Plaintiffs filed this suit as a class action, seeking a declaratory judgment that the statutes and regulations as implemented are unconstitutional and injunctive relief in the form of notification to the putative class members whose tax refunds might be intercepted and a hearing before the refunds may be assigned to the Connecticut Department of Human Resources (DHR).

This Court denied plaintiffs' motion for a preliminary injunction. It also denied the state defendant's motion to dismiss. Still before the court are the federal defendants' motion to dismiss, plaintiffs' motion for summary judgment, plaintiffs' motion for class certification and state and federal defendants' motions for summary judgment.[1]

A. *Federal Defendants' Motion to Dismiss*

■ Defendants Donald Regan, Secretary of the United States Department of the Treasury, and Richard Schweiker, Secretary of the United States Department of Health and Human Services (HHS), claim that this action is barred by Section 6305(b) of the Internal Revenue Code of 1954 and by the Anti-Injunction Act, Section 7421(a) of the Internal Revenue Code of 1954. For the reasons stated in this court's ruling on Defendant Manning's motion to dismiss, this argument is rejected.

Defendants also argue that the Declaratory Judgment Act, 28 U.S.C. § 2201, prohibits declaratory relief with respect to any action challenging federal taxes and, therefore, with respect to this action challenging the interception of tax refunds. The Declaratory Judgment Act authorizes declaratory relief "... except with respect to Federal taxes ...".

■ It is not necessary for this court to decide whether the breadth of the Declaratory Judgment Act's exception for taxes is co-extensive with the effect of the Anti-Injunction Act. *"Americans United" Inc. v. Walters,* 477 F.2d 1169, 1176 (D.C.Cir.1973), *rev'd on other grounds,* 416 U.S. 752, 94 S.Ct. 2053, 40 L.Ed.2d 518 (1974). Because the Declaratory Judgment Act's prohibition refers to taxes and, like that of the Anti-Injunction Act, is designed to protect the "Government's need to assess and collect taxes as expeditiously as possible with a minimum of pre-enforcement judicial interference," *Bob Jones University v. Simon,* 416 U.S. 725, 736, 94 S.Ct. 2038, 2045, 40 L.Ed.2d 496 (1974), it is inapplicable to questions dealing with the disposition of a tax refund. As this court noted in its ruling on Defendant Manning's motion to dismiss, the federal-state intercept program takes effect only after the assessment and collection of federal income taxes. The federal government at that point has no interest in the refunds. No substantial governmental purpose related to taxes would be served by prohibiting either injunctive or declaratory relief in this case. Thus, this

---

1. Plaintiffs have also filed a motion to amend judgment following the denial of their motion for preliminary injunction. This motion is denied.

action is not barred by the Declaratory Judgment Act.

The federal defendants' claim that the doctrine of sovereign immunity bars the action raises more troublesome issues. In general, the United States, as sovereign, is immune from suit absent its consent. *Lehman v. Nakshian,* 453 U.S. 156, 160, 101 S.Ct. 2698, 2701, 69 L.Ed.2d 548 (1981). There is no question that Defendants Regan and Schweiker are sued in their official capacities, not in their individual capacities, and that this is a suit directed against the United States. *See Hawaii v. Gordon,* 373 U.S. 57, 58, 83 S.Ct. 1052, 1053, 10 L.Ed.2d 191 (1963). The relief requested would require the Secretary of HHS to refrain from certifying the names of people subject to the intercept program to the Internal Revenue Service (IRS) and the Secretary of Treasury to refrain from transferring the tax overpayments to the DHR until the putative class members have been notified of the intercept program and been given an opportunity to challenge any offset of their tax overpayments at a hearing. The effect of the judgment would be "to restrain the Government from acting, or to compel it to act," *Larson v. Domestic & Foreign Commerce Corp.,* 337 U.S. 682, 704, 69 S.Ct. 1457, 1468, 93 L.Ed. 1628 (1949) and, thus, is an action against the United States.

■ Several exceptions to the doctrine of sovereign immunity have been recognized in suits against the United States. In particular, the doctrine does not bar a suit when "the complaint alleges that agents of the Government have exceeded their constitutional authority while purporting to act in the name of the sovereign." *Berk v. Laird,* 429 F.2d 302, 306 (2d Cir.1970), *cert. denied sub nom. Orlando v. Laird,* 404 U.S. 869, 92 S.Ct. 94, 30 L.Ed.2d 113 (1971); *see Dugan v. Rank,* 372 U.S. 609, 621–22, 83 S.Ct. 999, 1006–1007, 10 L.Ed.2d 15 (1963); *Larson v. Domestic & Foreign Commerce Corp.,* 337 U.S. 682, 689–91, 69 S.Ct. 1457, 1461–62, 93 L.Ed. 1628 (1949); *Smith v. Lehman,* 689 F.2d 342 at 345 (2d Cir.1982). Plaintiffs here allege that their tax refunds have been withheld in violation of their Fourteenth Amendment due process rights. Thus, this exception to the doctrine of sovereign immunity applies. Sovereign immunity cannot serve as a defense in this case.[2]

Finally, the federal defendants claim that complete and effective judgment for the plaintiffs would impose no obligations on the federal defendants. If this allegation is correct, the complaint must be dismissed with respect to the federal defendants for failure to state a claim upon which relief may be granted, under Fed.R.Civ.P. 12(b)(6).

■ A complete and effective remedy for the plaintiffs, should they succeed on the merits of their claims, cannot be guaranteed without the presence of the federal defendants. The IRS must provide information on the amount of the tax refunds attributable to the non-delinquent spouse's income and to earned income credits. Only that part of the refund attributable to the obligated taxpayer's refund of taxes paid is

---

2. The doctrine of sovereign immunity will not bar this suit even if there were no claimed constitutional violation. The doctrine applies in suits seeking declaratory and injunctive relief "if the relief requested cannot be granted by merely ordering the cessation of conduct complained of but will require affirmative action by the sovereign . . . ," *Larson v. Domestic & Foreign Commerce Corp., supra* 337 U.S. at 689 n. 11, 69 S.Ct. at 1462 n. 11, but not if the relief requested does not interfere with the necessary functioning of the government. In cases where the plaintiff made "only a comparatively mild request," as in *United States v. Briggs,* 514 F.2d 794, 808 (5th Cir.1975), or sought "modest" relief, as in *Leopold v. Civil Serv. Comm'n.,* 450 F.Supp. 154, 157–58 (E.D.N.Y.

1978), courts have not recognized a defense of sovereign immunity.

Here, the federal defendants are already participating in the refund offset program. If the State defendant provides the notification and hearings requested by the plaintiffs, the federal defendants need only slightly modify their departmental procedures. They would have to provide information on the breakdown of the tax overpayments between refunds of taxes paid and earned income credits, *see infra* section D, as well as between refunds due the obligated taxpayer and that taxpayer's spouse. None of these obligations, if imposed on the federal defendants, would create a substantial financial or administrative burden.

covered by the federal-state intercept program. *See infra,* section D. Section 2331 also provides that the Secretary of the Treasury, with the approval of the Secretary of Health and Human Services, shall issue regulations governing the cooperating state agency's implementation of the program. Both federal defendants are necessarily implicated in the operation of the intercept program. For the foregoing reasons, the federal defendants' motion to dismiss is denied.

## B. *The State's Eleventh Amendment Claim of Immunity*

■ If the federal defendants do not refrain from transferring the tax overpayments to the State until complainants have been granted their full due process rights, the State asserts that the Eleventh Amendment will serve as a bar to plaintiffs' retroactive recovery. *Edelman v. Jordan,* 415 U.S. 651, 657, 94 S.Ct. 1347, 1353, 39 L.Ed.2d 662 (1974), explained that the Eleventh Amendment limited federal judicial remedial power to prospective injunctive relief and prohibited retroactive awards from a state's treasury. Plaintiffs, however, do not request that this court order the State of Connecticut to return funds received through the intercept program. Rather, they request declaratory and injunctive relief. The Eleventh Amendment, therefore, is not an issue in this case.

## C. *Plaintiffs' Motion for Class Certification*

Plaintiffs have moved that a class be certified, consisting of all persons whose income tax refunds have been or will be withheld and paid over to the State of Connecticut pursuant to § 2331(a) of the Omnibus Budget Reconciliation Act of 1981.[3]

There is no compelling reason to designate a class, since the equitable relief granted would benefit all persons similarly situated. *Bridgeport Guardians, Inc. v. Members of Bridgeport Civil Serv. Comm'n,* 354 F.Supp. 778, 783 (D.Conn.1973). Nonetheless, this is a case where the requirements of Fed.R.Civ.P. 23(a) and (b) are met, and a class may be certified.

■ Plaintiffs seek procedural protections for all people whose tax refunds have been or will be intercepted. They are not asking for individual reimbursement based upon particularized defenses. Thus, there can be no question that numerous people are involved;[4] that the legal questions relating to procedural due process and the factual questions relating to the implementation of the program in Connecticut are common; that the claims of the named plaintiffs are typical of all class members insofar as procedural claims are involved; and that plaintiffs have actively and competently represented class members in their pursuit of procedural protections.

An action, such as this, seeking declaratory and injunctive relief against government officials is the archetype of one where class action designation is straightforward, but largely a formality. *See Galvan v. Levine,* 490 F.2d 1255, 1261 (2d Cir.1973). Rule 23(b)(2) authorizes maintenance of a class action when "the party opposing the class has acted or refused to act on grounds generally applicable to the class." That is clearly the case here.

This case may be maintained as a class action, extending to those who have had or will have their tax refunds intercepted and paid over to the State of Connecticut.

## D. *Cross Motions for Summary Judgment*

The plaintiffs and each of the defendants have filed motions for summary judgment. Plaintiffs challenge the adequacy of the procedures provided in the statutory and regulatory scheme created by Section 2331 of the Omnibus Budget Reconciliation Act of 1981, in 42 U.S.C. § 664, 26 U.S.C.

---

**3.** Plaintiffs' motion and brief do not explicitly limit the proposed class to those whose refunds may be turned over to Connecticut. The argument before the court, however, has dealt only with the operation of the program in Connecticut.

**4.** DHR certified over 20,000 names to the IRS.

§ 6402, 47 Fed.Reg. 5712 (1982), and 47 Fed.Reg. 7425 (1982). Defendants claim that the notices sent by the State and by the IRS provide adequate procedural protections in this case involving a post-judgment diversion of assets. The validity of the individual claims of the plaintiffs or putative class members is not at issue.

There is no real dispute about the facts material to the claims, except perhaps for the accuracy of the State's list certifying to the IRS names of people who are delinquent in their support payments. As discussed below in note 10, this dispute does not affect the court's decision.

There is no need to review in detail the operation of the tax intercept program. In brief, the state agency in charge of implementing the intercept program, the Child Support Division (CSD) of the DHR, certified the names of individuals delinquent in their support obligations to the United States Treasury. Only later were the individuals notified that their tax refunds may be intercepted to offset delinquent support obligations assigned ·to the State and that questions about the individuals' support obligations could be addressed to a Family Relations Officer or the CSD. They were not told the claimed amount of their obligations or the fact that their names had already been certified to the IRS. Nor did the notice indicate the available defenses to the interception of tax refunds or the possibility that the refund of a non-obligated spouse in the case of a joint tax return might be intercepted.

The notice did not provide information about a procedure to challenge a refund offset. The two agencies identified in the notice appear to be available to answer questions, but not to provide a regular procedure in which to remedy errors.[5] Indeed,

Family Relations Officers have no authority to delete names from the list certified to the IRS. CSD, by contrast, may correct the list but has played a limited role in handling complaints.

A second notice was sent by the IRS to the taxpayer and the taxpayer's spouse, in the case of a joint return, after the refund had been intercepted. The notice advised the taxpayer of the amount of the overpayment, the amount intercepted and the fact that the intercepted overpayment had been paid to the State. The notice also advised the taxpayer that any questions about the obligation should be addressed to the CSD.

No other notices were sent before the filing of this suit. No provisions were made for regular procedures in which to challenge the State's claim to a refund.[6]

There is no doubt that the interception of their tax refunds deprived plaintiffs of a protected property right and that the due process guarantees of the Fifth and Fourteenth Amendments are implicated. The issue before the court, thus, is whether the two notices and the availability of personnel from the Family Relations Office and the CSD to answer questions satisfy the taxpayers' due process rights to notice and an opportunity to contest the assignment of their refunds.

The requirements of due process are not inflexible and must take into account the circumstances surrounding the particular governmental action complained of. *Morrissey v. Brewer,* 408 U.S. 471, 481, 92 S.Ct. 2593, 2600, 33 L.Ed.2d 484 (1972). In determining what process is due, the court will consider separately the requirements of notice and of a procedure for resolving disputes.

---

**5.** The notice, dated February, 1982, provides: "If you question whether you owe past due child or spousal support payments, and if you are uncertain of the amount of such payments, please contact your Family Relations Officer or the Child Support Unit located where your dependent children live."

**6.** As applicable to the intercept of refunds due on 1982 tax payments the DHR sent two modi-

fied notices, dated September and October, 1982. These notices are not an issue in this case, but indicate the State's good faith attempt to comply with the requirements of due process. The second notice states that complainants may obtain a pre-interception review by a Family Relations Officer, followed by the right to a court hearing. It also describes two defenses a complainant might raise.

The Supreme Court announced in *Mullane v. Central Hanover Trust Co.,* 339 U.S. 306, 314, 70 S.Ct. 652, 657, 94 L.Ed. 865 (1950), that a "fundamental requirement of due process ... is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." In a case involving the termination of electric utility service, *Memphis Light, Gas & Water Div. v. Craft,* 436 U.S. 1, 15, 98 S.Ct. 1554, 1563, 56 L.Ed.2d 30 (1978), the Supreme Court interpreted this requirement to include notice of the availability of a procedure for protesting the contested government action. Because many of the utility company's customers may be unsophisticated, the court noted the importance of a clear and specific notice. *See id.* at 15 n. 15, 98 S.Ct. at 1563 n. 15.

Other courts have required notification not only of the procedures but of the defenses available to a judgment debtor. *See Finberg v. Sullivan,* 634 F.2d 50, 62 (3d Cir.1980); *Deary v. Guardian Loan Co., Inc.,* 534 F.Supp. 1178, 1187 (S.D.N.Y.1982). Both of these cases involve judgment debtors who contested execution of the judgments by judgment creditors. Even though the debtors had been afforded an opportunity to challenge the underlying debt, they were given inadequate notice of the enforcement of the judgment against particular property. The two courts held that due process under the circumstances requires notice both of the exemptions to which the debtors may be entitled and of the procedures for asserting those exemptions. The procedural protections available before the original judgment on the debts was entered were held to be an insufficient substitute for the constitutionally required procedures at the time of execution upon that judgment when the debtor may assert new defenses.

Like the judgment debtors in *Finberg* and *Deary,* plaintiffs claim they were not afforded adequate notice. State court proceedings which determine support obligations certainly do not provide notice of the statutory authority created by Section 2331 of the Omnibus Budget Reconciliation Act. If those proceedings put anyone on notice as to future actions to enforce the obligations, it is the person with the obligation, not a non-obligated spouse or a person with no assigned obligation whatsoever, as several of the plaintiffs and putative class members here claim to be.[7] Knowledge of the state proceedings cannot provide the kind of specific and clear notice, even to those with obligations, that the Supreme Court found was necessary in *Memphis Light,* involving similarly unsophisticated complainants.

■ Both the pre-intercept notice sent by the DHR and the post-intercept notice sent by the IRS fail to meet the due process requirements for notice. Neither mentions the possible defenses an individual might have to the interception of tax refunds or the availability of regular procedures in which to challenge the offset. Some people, in particular non-obligated spouses filing joint tax returns, never received individual notice. Others, especially when they are relatively uneducated and uninformed about their legal rights, may feel quite helpless when told that their refunds will be intercepted. A clear and detailed predeprivation notification, specifying the possible defenses and the procedures for asserting those defenses, is necessary to afford due process protection to these individuals.[8]

Under the second branch of the due process requirements, complainants must have available an opportunity to be heard " 'at a meaningful time and in a meaningful manner.' " *Mathews v. Eldridge,* 424 U.S. 319,

7. For example, plaintiff Elinor Nelson claims that she owed no support, inasmuch as the State's action against her for support had been dismissed in June, 1981; Dorothy Whitfield filed a joint return with her husband, who alone owed the past-due support; proposed intervenor George Huntley claims that his child sup-

port obligations were never assigned to the State.

8. The State has already indicated its willingness to send more detailed notices. *See supra* note 6.

333, 96 S.Ct. 893, 901, 47 L.Ed.2d 18 (1976) (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552, 85 S.Ct. 1187, 1191, 14 L.Ed.2d 62 (1965)). In general, a predeprivation notice and opportunity to be heard is required, *see Parratt v. Taylor*, 451 U.S. 527, 538, 101 S.Ct. 1908, 1914, 68 L.Ed.2d 420 (1981), but in certain circumstances, postdeprivation remedies may suffice. Where a public health danger exists, as in *North American Cold Storage Co. v. Chicago*, 211 U.S. 306, 29 S.Ct. 101, 53 L.Ed. 195 (1908) (unwholesome food), and *Ewing v. Mytinger & Casselberry, Inc.*, 339 U.S. 594, 70 S.Ct. 870, 94 L.Ed. 1088 (1950) (dangerous drugs); where there is an economic emergency during wartime, as in *Bowles v. Willingham*, 321 U.S. 503, 64 S.Ct. 641, 88 L.Ed. 892 (1944) (rent control orders); where predeprivation administrative proceedings are substantially fair and reliable, as in *Mathews v. Eldridge, supra* (social security termination); and where predeprivation process is impracticable, as in *Parratt v. Taylor, supra* (negligent actions by state prison officials), due process requirements may be satisfied with a postdeprivation hearing.

The Mathews court indicated three factors which should be considered in balancing competing interests to determine the appropriate time and type of procedural protection:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Mathews v. Eldridge*, supra 424 U.S. at 335, 96 S.Ct. at 903.

The private interest here is obvious. Tax refunds, especially for the low and moderate income individuals affected by these statutory provisions, may make a noticeable difference in the individuals' living standards. Even if the burden of an unjust offset is not as great as that of the loss of welfare benefits for those on the very margin of subsistence, as in *Goldberg v. Kelly*, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970), it is significant. A temporary deprivation may create a substantial burden.

The State government's interest in receiving its share of the tax refund is, also, not insignificant. The State provides assistance to families with dependent children and, before granting eligibility for assistance, requires recipients to assign their accrued support rights to the State. The State has a clear financial interest in obtaining payment in accordance with the assigned support rights as soon as possible. An opportunity to challenge the interception of a tax refund, however, will not permanently deprive the State of its legitimate assignment rights. Unlike the case of *Mathews v. Eldridge, supra,* where a predeprivation hearing would allow the social security recipient to continue to receive and spend benefits, even if termination is ultimately upheld, a predeprivation hearing here would leave the disputed funds under the control of the IRS. There is no danger that the property will be wasted or concealed.

No doubt, a requirement that the government provide hearings, whether before or after the deprivation, would impose a fiscal and administrative burden beyond that imposed on the DHR and the Family Relations Officers at the time this suit was filed. An announced administrative procedure with judicial review, where individuals may challenge the refund offset and present defenses, however, need not impose a great burden. The administrative procedure may take the form of an opportunity to submit documents which support the complainant's claim along with an opportunity to discuss the matter with an official. The hearing officer should submit a short statement of the reasons for the decision reached. Judicial review may be confined to the record.

A predeprivation proceeding is not impracticable, as it would have been in the case of negligent official conduct in *Parratt, supra.* Nor should such a hearing impose a great administrative burden on

the government. The State has already shown good faith efforts to comply with the requirements of due process by sending modified notices. The two modified notices are dated September and October, 1982, allowing ample time before the fifteenth of December, the last day on which the certified lists submitted for administrative review of the certification of names to the IRS may be updated, as provided in the new notices themselves.

Pretermination administrative review does not impose a greater financial burden on the State than the DHR has already willingly undertaken in response to the complaints arising out of the tax refund intercept program. The State currently offers an administrative review of the proposed offset, and claims judicial proceedings are available thereafter.[9] Modification of the notices and of the proceedings to comply with this Court's order imposes no additional financial burden.

The Family Relations Officer or other official who handles the administrative review must have the authority to delete names from the list certified to the IRS. Here, as in *Memphis Light, supra* 436 U.S. at 18, 98 S.Ct. at 1564, an "opportunity for a meeting with a responsible employee empowered to resolve the dispute could be afforded well in advance of the scheduled date of termination."[10]

In addition to their due process arguments, plaintiffs raise a substantive defense to the interception of certain tax refunds. They argue that the interception of refunds from the IRS applies only to refunds of taxes paid, but not to "refunds" of Earned Income Credits (EIC).

■ The statutory language is not clear. Therefore, some analysis of the relevant three provisions is necessary. 42 U.S.C. § 664 of the Social Security Act defines the term "past-due support" and authorizes the Secretary of Treasury to withhold past-due support from "refunds of Federal taxes paid."[11] 26 U.S.C. § 6402 of the Internal Revenue Code authorizes the reduction by

---

**9.** The nature of and legal basis for judicial review of the DHR's decision is not clearly stated in the notice sent by the State in October, 1982. In particular, the notice does not indicate whether the review is available under Conn.Gen.Stat. § 4–166 *et seq.* the Uniform Administrative Procedure Act, after a hearing provided by a Family Relations Officer satisfying the procedural requirements for contested cases under the statute. If the administrative hearing does not satisfy the statute's requirements, and the due process clause of the Fourteenth Amendment does not require all the safeguards mandated by Conn.Gen.Stat. § 4–166 *et seq., Adamchek v. Bd. of Educ. of Stamford,* 174 Conn. 366, 387 A.2d 556 (1978), then judicial review under the statute is unavailable.

If, instead, the October, 1982, notice's reference to a court hearing is to a judicial review of court ordered support, due process protections are not afforded complainants without support obligations or with other defenses to the intercept program.

The court recognizes that any retroactive modification of support can only be effected by action of the state court and that access to the court to seek this kind of relief has always been available. The notice, hearing and judicial relief which are contemplated by this opinion are those which taxpayers who wish to challenge the existence of a valid support order against them or the amount of any claimed arrearage must have available.

**10.** Because of the small cost to the government of providing additional procedural safeguards, it is unnecessary to make a detailed inquiry into the risk of erroneous deprivation and the probable value of additional safeguards. Named plaintiffs allege that their refunds were incorrectly intercepted when they had defenses which they could have presented to an administrative official. There appears to be some benefit from the proposed safeguards.

**11.** 42 U.S.C. § 664 provides:

(a) Upon receiving notice from a State agency administering a plan approved under this part that a named individual owes past-due support which has been assigned to such State pursuant to section 602(a)(26) of this title, the Secretary of the Treasury shall determine whether any amounts, as refunds of Federal taxes paid, are payable to such individual (regardless of whether such individual filed a tax return as a married or unmarried individual). If the Secretary of the Treasury finds that any such amount is payable, he shall withhold from such refunds an amount equal to the past-due support, and pay such amount to the State agency (together with notice of the individual's home address) for distribution in accordance with section 657(b)(3) of this title.

(b) The Secretary of the Treasury shall issue regulations, approved by the Secretary of Health and Human Services, prescribing the

the amount of past-due support of "any overpayment to be refunded to the person making the overpayment.[12] 26 U.S.C. § 6401 of the Internal Revenue Code defines overpayment to include the excess of an earned income credit over tax liability.[13]

The ambiguity in the statutory provisions involves the use of the word "overpayment," which is broadly defined in 26 U.S.C. § 6401, but is limited in 26 U.S.C. § 6402 by inclusion of the phrase "overpayment to be

refunded to the person making the overpayment." Significantly, a less inclusive phrase is also used in 42 U.S.C. § 664. The two latter provisions, but not the former, are part of § 2331 of the Omnibus Budget Reconciliation Act of 1981. Section 6401, by contrast, is a general provision in the chapter on abatements, credits and refunds, of the Internal Revenue Code, governing the tax refund process.

This narrow reading of overpayment, such that the intercept program does not

time or times at which States must submit notices of past-due support, the manner in which such notices must be submitted, and the necessary information that must be contained in or accompany the notices. The regulations shall specify the minimum amount of past-due support to which the offset procedure established by subsection (a) of this section may be applied, and the fee that a State must pay to reimburse the Secretary of the Treasury for the full cost of applying the offset procedure, and provide that the Secretary of the Treasury will advise the Secretary of Health and Human Services, not less frequently than annually, of the States which have furnished notices of past-due support under subsection (a) of this section, the number of cases in each State with respect to which such notices have been furnished, the amount of support sought to be collected under this subsection by each State, and the amount of such collections actually made in the case of each State.

(c) As used in this part the term "past-due support" means the amount of a delinquency, determined under a court order, or an order of an administrative process established under State law, for support and maintenance of a child, or of a child and the parent with whom the child is living.

12. 26 U.S.C. § 6402 provides:

(a) In the case of any overpayment, the Secretary or his delegate, within the applicable period of limitations, may credit the amount of such overpayment, including any interest allowed thereon, against any liability in respect of an internal revenue tax on the part of the person who made the overpayment and shall, subject to subsection (c), refund any balance to such person.

(b) The Secretary is authorized to prescribe regulations providing for the crediting against the estimated income tax for any taxable year of the amount determined by the taxpayer of the Secretary to be an overpayment of the income tax for a preceding taxable year.

(c) The amount of any overpayment to be refunded to the person making the overpay-

ment shall be reduced by the amount of any past-due support (as defined in section 464(c) of the Social Security Act) owed by that person of which the Secretary has been notified by a State in accordance with section 464 of the Social Security Act. The Secretary shall remit the amount by which the overpayment is so reduced to the State to which such support has been assigned and notify the person making the overpayment that so much of the overpayment as was necessary to satisfy his obligation for past-due support has been paid to the State. This subsection shall be applied to an overpayment prior to its being credited to a person's future liability for an internal revenue tax.

13. 26 U.S.C. § 6401 provides:

(a) The term "overpayment" includes that part of the amount of the payment of any internal revenue tax which is assessed or collected after the expiration of the period of limitation properly applicable thereto.

(b) If the amount allowable as credits under sections 31 (relating to tax withheld on wages) and 39 (relating to certain uses of gasoline, special fuels, and lubricating oil), and 43 (relating to earned income credit) exceeds the tax imposed by subtitle A (reduced by the credits allowable under subpart A of part IV of subchapter A of chapter 1, other than the credits allowable under sections 31, 39, and 43), the amount of such excess shall be considered an overpayment. For purposes of the preceding sentence, any credit allowed under paragraph (1) of section 32 (relating to withholding of tax on nonresident aliens and on foreign corporations) to a nonresident alien individual for a taxable year with respect to which an election under section 6013(g) or (h) is in effect shall be treated as an amount allowable as a credit under section 31.

(c) An amount paid as tax shall not be considered not to constitute an overpayment solely by reason of the fact that there was no tax liability in respect of which such amount was paid.

apply to the EIC, is supported by the legislative purpose behind the EIC. *See* S.Rep. No. 94–36, 94th Cong., 1st Sess. 11 (1975), *reprinted in* 1975 U.S.Code Cong. & Admin. News 54, 64. The EIC was designed to "provide relief to families who currently pay little or no income tax.... [T]he new credit, in effect, provides an added bonus or incentive for low-income people to work...." *Id.* at 64. If the credit were intercepted by the IRS, those purposes would be undercut. *Cf. In re Searles,* 445 F.Supp. 749, 752 (D.Conn.1978) (EIC not considered property of the bankrupt within meaning of Bankruptcy Act, because of Congressional purpose to assist needy families).

The narrow interpretation of the statutory language provided by the plaintiffs must be upheld. The notice sent to the plaintiffs, therefore, must include notice of this defense to the intercept program.

Plaintiffs' request for declaratory relief is granted. The operation of the tax refund intercept program violated their due process rights protected by the Fifth and Fourteenth Amendments.

Defendants must provide notice to all those whose tax refunds might be intercepted, specifying the possible defenses they might have and the availability of regular procedures in which to challenge the offset. They must also provide a predeprivation administrative review before an official with the authority to remove names from the list certified to the IRS. That review need not consist of a full adjudicative hearing, but must permit the complainant to appear personally and to present documentary evidence. The final administrative decision must be judicially reviewable, although not necessarily before the tax refunds are intercepted. The parties shall submit for the Court's review, no later than March 1, 1983, proposals for notice and procedures in conformity with this opinion. The Court retains jurisdiction for the purpose of determining what, if any, injunctive relief may be appropriate and for the assessment of costs and attorneys' fees.

SO ORDERED.