OPINION OF THE COURT
Sheila Abdus-Salaam, J.
This is a declaratory judgment action in which plaintiffs challenge the constitutionality of the Statewide Offset Program (SWOP) which allows the New York State Department of Taxation and Finance (DTF) to offset taxpayers’ State income tax refunds against debts owed by the taxpayers to New York State agencies. Plaintiffs have moved for partial summary judgment on several causes of action and for class certification. There is also a motion by individuals not named as plaintiffs here for leave to intervene. Defendants have cross-moved for partial summary judgment on several of their affirmative defenses, or alternatively, for an order converting this action to a CPLR article 78 proceeding and transferring venue to Supreme Court, Albany County.
Plaintiffs and proposed plaintiff-intervenors are individuals who have had, or will have, their New York State income tax refunds applied to debts allegedly owed to State agencies, pursuant to Tax Law §§ 171-d and 171-f. The debts relate to overpayments of public assistance, unpaid school loans and unpaid hospital bills for State facilities.
The Tax Law provides a process by which State agencies certify to DTF that there is a “past-due legally enforceable debt” owed by a taxpayer (Tax Law § 171-f [3] [d]); the Tax Commissioner then certifies to the State Comptroller the amount of the overpayment (amount of refund) to be credited against the legally enforceable debt (Tax Law § 171-f [6]); and the Tax Commissioner notifies the taxpayer of the amount of the overpayment to be credited against the past-due legally en *782 forceable debt (Tax Law § 171-f [7]). This process is called the Statewide Offset Program, or SWOP. The complaint alleges that the SWOP is constitutionally flawed, both as enacted and as implemented in that, inter alia, it does not adequately notify taxpayers as to the nature of the alleged debt or the effect of their failure to challenge the debt, prior to their tax refunds being withheld.
Defendants’ Request that this Action be Converted to an Article 78 Proceeding
That portion of defendants’ motion which seeks an order converting this action to an article 78 proceeding, and then transferring the proceeding to Albany County on the grounds that it is the only venue where a special proceeding can be brought against the Tax Commissioner, and that the State agencies’ principal offices are located in Albany County, is denied. Here, plaintiffs challenge both the practices of defendants, as they pertain to the individual plaintiffs and taxpayers in general, as well as the constitutionality of the statutes upon which defendants base their actions. Thus, as in Matter of Zuckerman v Board of Educ. (44 NY2d 336), plaintiffs “seek more than may be permitted under an article 78 proceeding” (44 NY2d 336, 344) and their challenge to Tax Law §§ 171-d and 171-f is properly the subject of a declaratory judgment action (see, Bryant Ave. Tenants’ Assn. v Koch, 71 NY2d 856). Therefore, this action is not suitable for conversion to an article 78 proceeding.
Similarly, plaintiffs’ claims are not barred by the four-month Statute of Limitations applicable to a special proceeding, because an article 78 proceeding would not be appropriate here (cf., Lenihan v City of New York, 58 NY2d 679; Solnick v Whalen, 49 NY2d 224). Accordingly, defendants’ motion is denied to the extent that it seeks summary judgment on its second affirmative defense of Statute of Limitations, and that affirmative defense is dismissed.
A “Past-Due Legally Enforceable Debt”
Tax Law § 171-f (3) defines a legally enforceable debt against which an overpayment and interest thereon may be credited as a debt, upon notice to the taxpayer.
The statutory scheme of the SWOP provides for two types of notices to taxpayers. The first notice, commonly referred to as a preoffset notice, is defined in Tax Law § 171-f (3) (c), as set forth above. This notice tells the taxpayer the amount of the *783 debt; informs him/her that State law permits the offset of tax refunds against such debts; and affords the taxpayer 30 days to pay the debt or to seek review of the proposed action. The second type of notice, commonly referred to as the postoffset notice, is provided for in Tax Law § 171-f (7). This is the “dye has been cast” notice. No recourse is afforded the taxpayer at this point. The tax return is withheld in order to offset the debt.
The SWOP as it Pertains to the Named Plaintiffs
Plaintiffs have described various scenarios in which they have all been affected by the SWOP. Most of the plaintiffs are former recipients of public assistance benefits from the New York State Department of Social Services (DSS) (now called the New York State Office of Temporary and Disability Assistance [OTDA]). Their tax refunds, ranging in amounts from $467 to $1,112 were withheld from them years after they had ceased receiving benefits, based upon alleged overpayments that had been made by the agency, and not repaid by plaintiffs. In some instances, the first notice that plaintiffs received that there was a claim by the agency of a debt was the postoffset notice informing them that their tax refund had been withheld. In other instances, plaintiffs had received preoffset notices from the agency, but believed that the issue of overpayment had been resolved.
Plaintiffs’ Motion for Class Certification
The prerequisites to a class action are set forth in CPLR 901 (a). Defendants do not dispute that the class is so numerous that joinder of all members would be impracticable. However, defendants argue that the other prerequisites have not been satisfied.
Upon analysis of the competing arguments with respect to the propriety of certifying this action as a class action, and mindful of the “well-settled principle that class action relief is generally inappropriate when governmental operations are involved” (Matter of Non-Emergency Transporters v Hammons, 249 AD2d 124, 128), the court concludes that certification is appropriate in this situation. Here, as in Seittelman v Sabol (217 AD2d 523, lv dismissed 87 NY2d 860, lv granted 90 NY2d 809, affd as mod 91 NY2d 618), the government operations rule does not prohibit class certification where defendants, although given a full opportunity, have failed to propose any form of relief that even purports to protect the rights of taxpay *784 ers in the event that this court finds merit to plaintiffs’ challenge to the SWOP. It is apparent from the motion for leave to intervene that has been submitted, and the subsequent motion for leave to intervene that was filed after these motions were submitted, that there are many individuals who have been, and will continue to be, affected by the SWOP.
Under these circumstances, as in Tindell v Koch (164 AD2d 689), the members of the proposed class are individuals for whom the commencement of individual actions, and/or the filing of motions for leave to intervene will be “ ‘oppressively burdensome’ ” (164 AD2d 689, 695; see also, Velazquez v State of New York, 226 AD2d 141, appeal dismissed 88 NY2d 963, 90 NY2d 1007, lv denied 91 NY2d 808). And, as was pointed out by the First Department in Tindell (supra, at 695), “[e]ven if a significant number of the members of the proposed class were to obtain free legal representation in connection with their claims, the multiplicity of lawsuits would give rise to the possibility of inconsistent rulings by various courts in the State. Proper class action certification would eliminate that possibility.” To the extent that a taxpayer’s intervention in this lawsuit would prevent such inconsistent rulings, class action certification would relieve this court from entertaining what in all likelihood will be numerous applications for intervention, thus promoting the efficient use of court resources.
Further, contrary to defendants’ assertion, the principle of stare decisis will not adequately protect members of the class. While a declaratory judgment and injunction will prevent future violation of constitutional and statutory rights, individuals whose tax refunds have already been seized will not be protected absent class certification. Additionally, the court is not persuaded that the factual differences between each defendant’s practices with respect to the SWOP outweigh the common questions of law and fact. The common practices of the defendant agencies, and the common statutory requirements of Tax Law §§ 171-d and 171-f as they pertain to due process, predominate over any differences between the procedures employed by each agency. And, to the extent that the differences are significant, the class can be divided into subclasses (see, Weinberg v Hertz Corp., 116 AD2d 1, 7, affd 69 NY2d 979; CPLR 906 [2]). In the event that it becomes necessary or advantageous to do so, this court can modify its order and create appropriate subclasses pertaining to each agency. However, *785 the court does not perceive the necessity for doing so at this juncture. Finally, plaintiffs have demonstrated that they will fairly and adequately protect the interests of the class members. Accordingly, plaintiffs’ motion for class certification is granted and the class is defined as those individuals who have had or will have their New York State income tax refunds taken by the New York State Department of Taxation and Finance on behalf of New York State agencies to whom they allegedly owe money.
In view of this court’s decision to grant class certification in this action, the motion for leave to intervene is denied as unnecessary. The proposed interveners are members of the certified class.
The third cause of action alleges that the initial notices used by defendants “do not notify debtors of the possible preclusive effect of the failure to take timely action to contest the underlying debt” and that “ [defendants violate the rights of plaintiff under the Due Process Clauses of the Fourteenth Amendment to the United States Constitution and of the New York State Constitution, by implementing the tax offset process authorized by Tax Law § 171-f, which permits them to certify past due legally enforceable debts” based on these inadequate initial notices. (Complaint para 143.) The notices complained of here are not the “preoffset” notices, but a letter that is sent prior to the preoffset notice, and which mentions an outstanding debt without revealing the possibility that the debt might be offset against any tax refund due to the debtor.
While defendants dispute plaintiffs’ description of this cause of action as seeking a declaration that Tax Law § 171-f is facially unconstitutional, the court’s reading of this cause of action is that the statute is being challenged both on its face, and as implemented by defendants. “A statute is presumptively constitutional and should be construed in such a manner as to uphold its constitutionality (McKinney’s Statutes, § 150).” (Eaton v New York City Conciliation & Appeals Bd., 56 NY2d 340, 346; see also, National Assn. of Ind. Insurers v State of New York, 89 NY2d 950.) As the Supreme Court held in Matthews v Eldridge (424 US 319, 334), in determining whether a statute affords due process, the court must consider three distinct factors: (1) the private interest affected by government action; (2) the risk of erroneous deprivation of such interest and any probable value of additional or substitute procedural safeguards; and (3) the government’s interest, including the function involved and fiscal and administrative burdens that additional or substitute procedural requirements would entail.
*786 There is no dispute that taxpayers have a property interest in their tax refunds that is protected by due process safeguards. In arguing that Tax Law §§ 171-d and 171-f afford plaintiffs adequate due process, defendants claim that the plaintiffs’ private interests in their tax refunds involve “comparatively modest sums” (mem of law in opposition to plaintiffs’ motion for partial summary judgment, at 24). The court finds this argument profoundly insensitive to the due process rights of citizens in general, and plaintiffs in particular. The impact that the SWOP has on plaintiffs’ lives should not be minimized by defendants. The refunds that were withheld from plaintiffs involve amounts ranging from $194 to $1,112, and averaging $653. This money is significant to plaintiffs, many of whom are former recipients of public assistance, and who now, as employed, taxpaying individuals, depend on receiving their tax refunds.
Any implication that plaintiffs’ private interest in their tax refunds is deserving of only minimal due process protections is rejected. As was observed by the court in Nelson v Regan (560 F Supp 1101, 1108 [D Conn 1983], affd 731 F2d 105): “The private interest here is obvious. Tax refunds, especially for the low and moderate income individuals affected by these statutory provisions, may make a noticeable difference in the individuals’ living standards * * * A temporary deprivation may create a substantial burden.”
Defendants do not deny that the initial notice of the underlying debt that is sent to the debtor does not inform the debtor of the possible preclusive effects of failing to challenge the debt. Thus, there are no material facts in dispute with respect to the third cause of action. The initial notice sent by OTDA eventually leads to the certification by OTDA that there is a past-due legally enforceable debt, and then to an offset of the debt against the refund due to plaintiffs.
The initial notice to the debtors, such as plaintiffs here, is entitled “Notice of Intent to Reduce Public Assistance”. The notice indicates the agency’s intention to reduce the recipient’s public assistance grant due to a determination of overpayment, and informs the recipient of his/her right to a fair hearing in which to challenge the finding of overpayment. The thrust of the notice is that there will be a reduction of future payments, with only a vague reference that the agency “may” have to recover any overpayments by “other legal means”.
Some of the plaintiffs received this notice after they were no longer receiving benefits. A notice stating that failure to *787 request a fair hearing will result in reduction of benefits would not induce an individual who is no longer receiving benefits to request a fair hearing to challenge a finding of overpayment, even if that person believed that there had been no overpayment.
Therefore, the initial notice sent by OTDA does not adequately convey information essential to an evaluation of whether to challenge the determination (see, e.g., Rodriguez v Debuono, 177 FRD 143, 165 [SD NY 1997]), namely, that failure to challenge a finding of overpayments could ultimately result in withholding of tax refunds or other collection methods. Despite the aforementioned infirmities of the initial notice sent by OTDA, the finding of overpayment meets the statutory definition of past-due legally enforceable debt, in that the State agency has “made a final administrative determination” with respect to the issue of overpayment (Tax Law § 171-f [3] [b]).
This circumstance is similar to the one that was before the court in Nelson v Regan (supra), where Federal tax refunds were transferred to the State and withheld by the State to offset taxpayers’ past-due child support obligations. In Nelson, the court observed that “[s]tate court proceedings which determine support obligations certainly do not provide notice of the statutory authority created by [the tax offset program] * * * Knowledge of the state proceedings cannot provide the kind of specific and clear notice, even to those with obligations, that the Supreme Court found was necessary in Memphis Light, [Gas & Water Div. v Craft, 436 US 1,] involving similarly unsophisticated complainants.” (560 F Supp 1101, 1107.)
Thus, with respect to the second factor enunciated by the Supreme Court in Matthews v Eldridge (supra), there is a risk of error in the procedure employed by defendants. Tax refunds are withheld upon a prior determination of overpayment, even though taxpayers are not informed that a failure to challenge an erroneous determination of overpayment could result in such action. Plaintiffs argue persuasively that the initial notices provided by the agencies to debtors were not written with the possibility of future tax refund offsets in mind, and that the procedures for fair hearings were not created with the purpose of establishing final administrative determinations that meet the standards of Tax Law § 171-f.
Further, the third factor identified by Matthews (supra) is an examination of the government’s interest, as well as any fiscal burden imposed. While the government’s interest in collecting debts is significant, it is not outweighed by due process *788 considerations and citizens’ rights to their own earned income (see, Marcello v Regan, 574 F Supp 586 [D RI 1983]). Additionally, requiring amendment of the statutory definition of a past-due legally enforceable debt to provide for adequate notice to the debtor would not be financially onerous for the agencies involved, but would only require that the agencies provide notice as to the consequences of failing to challenge a determination.
Accordingly, plaintiffs are granted summary judgment on their third cause of action, declaring that defendant OTDA violates the rights of plaintiffs under the Due Process Clauses of the Fourteenth Amendment to the United States Constitution and of the New York Constitution, by implementing the tax offset process authorized by Tax Law § 171-f, which permits it to certify past-due legally enforceable debts based on initial notices that do not notify debtors of the possible preclusive effect of the failure to take timely action to contest the underlying debt. Defendant OTDA is enjoined from certifying debts of plaintiff class members to defendant DTF, and defendant DTF is enjoined from intercepting any tax refunds, unless the class members have received an initial notice warning them of the possible preclusive effect of failure to take timely action to contest the underlying debt.
The fourth cause of action alleges that “[d]efendant OTDA/ DSS violates the rights of the plaintiff class under Tax Law § 171-f by promulgating regulations, at 18 NYCRR §§ 374.2 and 374.3, and by using pre-offset notices pursuant to those regulations, that deny alleged debtors the opportunity for an oral hearing prior to offset, as required by Tax Law § 171-f (3) (c), and that limit the available defenses more narrowly than they are limited by the statute.” (Complaint para 144.)
The. preoffset notices that were sent to plaintiffs Butler, Torres and Bonilla provided that plaintiffs could make a written request for review of the intended offset, and that upon such a request, plaintiffs must present written evidence and arguments. This is in accordance with 18 NYCRR 374.2, entitled “Notice”, which provides that the preoffset notice shall include a statement that “the individual may present written arguments and evidence in support of any defense to the offset” (18 NYCRR 374.2 [e]). However, this regulation (and the preoffset notice that is issued pursuant to this regulation) does not provide the taxpayer with an opportunity to “present, to the state agency, written evidence and arguments in support of his defense to the proposed referral or * * * appear at a scheduled *789 conference with the state agency to present oral arguments and written and oral evidence in support of such defense” as required by Tax Law § 171-f (3) (c). The court rejects the position taken by defendant OTDA that the use of the word “or” in subdivision (3) (c) of the statute gives the defendants the option of offering taxpayers an opportunity to appear at a conference, or simply providing for the opportunity to present written evidence and argument. Tax Law § 171-f (3) (c) gives the taxpayer the option of choosing to appear at a conference to present oral arguments and evidence, or of only submitting written evidence and arguments. The statute does not give defendant OTDA the right to limit the manner in which the taxpayer may present his/her defense.
Further, 18 NYCRR 374.3, entitled “Defenses”, sets forth the following defenses that may be raised against the offset of the tax refund, which defenses were set forth in the preoffset notices received by' plaintiffs Torres and Bonilla:
“(a) the person who received the notice of the tax refund offset is not the person identified as owing the overpayment; “(b) the overpayment has been repaid in full;
“(c) the overpayment has been partially repaid and the amount due is less than the amount set forth in the notice; and
“(d) the person is making current payments on the overpayment in accordance with an agreement with the social services district.”
However, Tax Law § 171-f includes no such limitation of defenses, but only provides that nothing shall be deemed to afford the taxpayer the opportunity to reargue any issue which was, or could have been, adjudicated in the proceeding described in subdivision (3), paragraph (a) (where the State has obtained a judgment) or paragraph (b) (where there has been a final determination made by an agency and the taxpayer had an opportunity for an adjudicatory proceeding, or was otherwise afforded due process protection). Such a limitation of defenses, as set forth in the regulation, precluded plaintiff Alejandro Bonilla from raising a defense to the offset, since his defense, which was that he never received any initial notice from DSS or the Human Resources Administration (HRA) as to any overpayment, and therefore did not have an opportunity for an adjudicatory proceeding, was not one of the defenses permitted by the regulation. Similarly, plaintiff Torres’ request for review of the offset was rejected for failure to assert one of the four permitted defenses, even though plaintiff believed that the matter had been resolved years earlier when she had submit *790 ted supporting documentation to HRA and had subsequently stopped receiving bills for overpayment.
The aforementioned regulations, which are inconsistent with the provisions of the statute, are invalid (see, Matter of Trump-Equitable Fifth Ave. Co. v Gliedman, 57 NY2d 588; Matter of Jones v Berman, 37 NY2d 42). Accordingly, plaintiffs are granted summary judgment on their fourth cause of action, declaring that defendant OTDA violated the rights of the plaintiff class by promulgating regulations 18 NYCRR 374.2 and 374.3, and by using preoffset notices pursuant to those regulations. Defendant OTDA is enjoined from sending preoffset notices, and defendant DTF is enjoined from intercepting tax refunds, pursuant to preoffset notices that are issued in accordance with these invalidated regulations.
The ninth cause of action alleges that “[defendant OTDA/ DSS also violates the rights of members of the plaintiff class under 18 NYCRR § 374.2 by certifying debts to the DTF using pre-offset notices that do not provide information about the nature of the alleged overpayment.” (Complaint para 149.) The regulation requires the preoffset notice to include a statement identifying the nature of the overpayment and the amount of the overpayment that is due. However, the notices that were sent to plaintiffs Butler, Torres and Bonilla only set forth an amount of a claimed overpayment, and do not provide any information as to the nature of the overpayment. Thus, the preoffset notice does not comply with the requirements of the regulation.
Further, the preoffset notice does not include any information as to the time period for which the claim is being made or the basis for the claim. Thus, taxpayers are not provided with enough information for them to discern whether they can assert even the limited defenses set forth in 18 NYCRR 374.3, such as full or partial repayment. A similar problem of inadequate notice was addressed by the court in Ellender v Schweiker (575 F Supp 590 [SD NY 1983], appeal dismissed 781 F2d 314), in the context of overpayment notices sent by the Social Security Administration to beneficiaries. The court aptly observed as follows: “There can be no doubt that a notice which merely advises * * * recipients of the fact and amount of alleged SSI overpayments offers the aggrieved plaintiffs no tangible information for them to dispute. If they do not know when the alleged overpayments occurred, the amount of overpayment in each time period, the amount of prior repayments, and the reason for the overpayment, it is impossible for them to check and *791 compare their own records to determine whether or not they are in accord with the claims asserted in the notice. The consequence of such inadequate notice is that the Secretary’s determinations remain final and unchallenged; the elderly beneficiaries have no evidence on which to object. ‘Unless a person is adequately informed of the reasons for denial of a legal interest, a hearing serves no purpose — and resembles more a scene from Kafka than a constitutional process. Without notice of the specific reasons * * * a claimant is reduced to guessing what evidence can or should be submitted in response and driven to responding to every possible argument * * * at the risk of missing the critical one altogether.’ Gray Panthers v. Schweiker, 652 F.2d 146, 168-89 (D.C.Cir.1980).” (575 F Supp 590, 600-601 [emphasis supplied].) The court concluded that “[t]he omission of these elements vital to beneficiaries who wish to object to the overpayment constitutes a denial of due process under the fifth and fourteenth amendments” (575 F Supp 590, 603).
Based upon the foregoing, plaintiffs are granted summary judgment on their ninth cause of action, declaring that defendant OTDA violates the rights of the members of the plaintiff class by certifying debts to the DTF using preoffset notices that do not provide information about the nature of the alleged overpayment as required by 18 NYCRR 374.2; enjoining defendant OTDA from using preoffset notices that violate the regulation, and enjoining DTF from accepting certification of the debts based upon the inadequate preoffset notices.
Conclusion
Plaintiffs’ motions for partial summary judgment and for class certification are granted as indicated. The motion for leave to intervene is denied as unnecessary. Defendants’ cross motion is denied in all respects and their second, fourth, sixth, seventh and eighth affirmative defenses are dismissed.