In re Cynthia Ann SEARLES, Bankrupt.

Martin W. HOFFMAN, Trustee,
Plaintiff, Appellee,

v.

Cynthia Ann SEARLES, Bankrupt,
Defendant, Appellant.

Civ. No. H–77–518.

United States District Court,
D. Connecticut.

Jan. 23, 1978.

Martin W. Hoffman, Hartford, Conn., for plaintiff, appellee.

Pamela Hershinson, Hugh Barber, Hartford, Conn., for defendant, appellant.

## MEMORANDUM OF DECISION

BLUMENFELD, District Judge.

This case presents a question of bankruptcy law to which two Bankruptcy Judges in this district have given squarely opposing answers. The question presented is whether that portion of an income tax refund attributable to the earned income credit of the bankrupt constitutes "proper-ty" within the meaning of § 70a of the Bankruptcy Act. Judge Trevethan has held that the credit does not constitute property within the meaning of the Act. *In Re Treffery*, No. B–76–30 (D.Conn., filed Sept. 27, 1976). In this case, which is before me on appeal, Judge Seidman ruled that the earned income credit received by the bankrupt is property which passes to the Trustee under § 70a.

### Facts

Cynthia Ann Searles, the bankrupt-appellant, filed her petition on December 23, 1976. In 1977, she received a tax refund for the tax year 1976 in the amount of $290.04. The bankrupt earned $2,288.05 in 1976, and the Federal Income Tax that was withheld, based upon those earnings, was $61.24. The refund of $290.04 was broken down as follows: $61.24 from withholding and $228.80 from the earned income tax credit. The bankrupt has turned over to the Trustee $61.24, but has refused to turn over the $228.80 attributable to the earned income tax credit, claiming that portion of the tax refund is exempt from the claim of the Trustee. The Trustee formally raised the issue by filing a complaint seeking recovery of the earned income portion of the refund amounting to $228.80, and the case was submitted for resolution on briefs without oral argument. From Judge Seidman's order directing the bankrupt to turn that amount over to the Trustee, the bankrupt appeals.

### I.

What constitutes "property" of a debtor that must be distributed to his creditors in bankruptcy is determined under § 70a(5) of the Bankruptcy Act, 11 U.S.C. § 110(a)(5):

"(a) The trustee of the estate of a bankrupt and his successor or successors, if any, upon his or their appointment and qualification, shall in turn be vested by operation of law with the title of the bankrupt as of the date of the filing of the petition initiating a proceeding under this title, except insofar as it is to proper-

ty which is held to be exempt, to all of the following kinds of property wherever located . . . (5) property, including rights of action, which prior to the filing of the petition he could by any means have transferred or which might have been levied upon and sold under judicial process against him, or otherwise seized, impounded, or sequestered . . . ."

It is neither necessary nor desirable to rely upon generalities or rigidly adhere to common law concepts in determining whether the earned income credit is "property" within § 70a(5). At times the jargon of a subject can be willingly accepted almost irrespective of the theory behind it but, as pointed out in *Segal v. Rochelle,* 382 U.S. 375, 379, 86 S.Ct. 511, 515, 15 L.Ed.2d 428 (1966), what constitutes "property" in the estate of a bankrupt must be limited by the purpose of the Bankruptcy Act:

> "Admittedly, in interpreting this section '[i]t is impossible to give any categorical definition to the word "property," . . .' *Fisher v. Cushman,* 103 F. 860, 864. Whether an item is classed as 'property' by the Fifth Amendment's Just-Compensation Clause or for purposes of a state taxing statute cannot decide hard cases under the Bankruptcy Act, *whose own purposes must ultimately govern.*
>
> " . . . However, . . . one purpose which is highly prominent and is relevant in this case is to leave the bankrupt free after the date of his petition to accumulate new wealth in the future." (emphasis added)

■ In view of the dual purposes of the Bankruptcy Act to pay creditors and to afford the bankrupt a fresh start, *Kokoszka v. Belford,* 417 U.S. 642, 646, 94 S.Ct. 2431, 41 L.Ed.2d 374 (1974), *reh'g denied,* 419 U.S. 886, 95 S.Ct. 160, 42 L.Ed.2d 131 (1974), an asset in the hands of the bankrupt can be taken by the Trustee to pay creditors under § 70a(5) if "it is sufficiently rooted in the pre-bankruptcy past and [not sufficiently] entangled with the bankrupt's ability to make an unencumbered fresh start . . . ." *Segal v. Rochelle, supra,* 382 U.S. at 380, 86 S.Ct. at 515.

In *Kokoszka v. Belford, supra,* the Court held that an income tax refund "does not relate conceptually to future wages and it is not the equivalent of future wages for the purpose of giving the bankrupt a 'fresh start,'" 417 U.S. at 647, 94 S.Ct. at 2434, and that it was " 'sufficiently rooted in the prebankruptcy past' to be defined as 'property' under § 70a(5)," *id.* at 648, 94 S.Ct. at 2435 (footnote omitted). Earlier, the "fresh start" doctrine enunciated in *Segal, supra,* 382 U.S. at 380, 86 S.Ct. 511, was applied in *Lines v. Frederick,* 400 U.S. 18, 91 S.Ct. 113, 27 L.Ed.2d 124 (1970), to support the Court's holding that accrued vacation pay for employees did not constitute "property" since the function of vacation pay was

> "to support the basic requirements of life for them and their families during brief vacation periods or in the event of layoff.
>
> . . .
>
> "The wage-earning bankrupt who must take a vacation without pay or forgo a vacation altogether cannot be said to have achieved the 'new opportunity in life . . .' . . . which it was the purpose of the statute to provide." 400 U.S. at 20, 91 S.Ct. at 114 (citation omitted).

## II.

This court must decide whether the policy of the Bankruptcy Act to afford bankrupts a "fresh start" and allow them to accumulate new wealth requires that the portion of appellant's tax refund check attributable to the earned income credit must be treated differently from the portion attributable to excess withholding tax. This can only be decided by examining Congress' purposes in establishing the earned income credit. The fact that the earned income credit operates through a tax return and is paid in the same check as excess withholding tax as a matter of administrative convenience does not necessarily mold the two payments into one kind of "property."

■ Appellant received an earned income credit through the operation of the Tax Reduction Act of 1975, Pub.L.No.94–12,

§ 204(a), 89 Stat. 26, 30–32, *as amended by* Tax Reform Act of 1976, Pub.L.No.94–455, § 401(c), 90 Stat. 1520, 1556–57 (codified at I.R.C. § 43). Under this provision, 10 percent of the first $4,000 of earned income is credited to the taxpayer, but the amount of the credit is reduced as adjusted gross income increases above $4,000, dropping to zero when adjusted gross income reaches $8,000. Only taxpayers with dependent children living in their households are eligible for the credit. I.R.C. § 43(c)(1)(A). It is thus designed to benefit only working low-income taxpayers with dependent children. The legislative history shows that Congress intended to aid "those who are most in need of the relief." S.Rep.No.94–36, 94th Cong., 1st Sess. 11 (1975), *reprinted in* [1975] U.S.Code Cong. & Admin.News 54, 64. The Senate Committee on Finance noted that the tax credit would "provide relief to families who currently pay little or no income tax. These people have been hurt the most by rising food and energy costs." *Id.*

The credit applies only to earned income, because one purpose for its enactment was to provide "an added bonus or incentive for low-income people to work." *Id.* The credit was also intended to stimulate the economy "because the low-income people [were] expected to spend a large fraction of their increased disposable incomes." *Id.* But the primary purpose was clearly to afford economic relief to low-income heads of households who work for a living.

■ These legislative purposes clearly distinguish the earned income credit from a refund of excess withholding taxes, which was held to constitute "property" under § 70a(5) in *Kokoszka v. Belford, supra.* The normal income tax refund is an amount actually deducted from the taxpayer's earnings in excess of the amount required by accurate computation of the rate applied to actual income. Thus it is money earned in the prior tax year (for a bankrupt, the

pre-bankruptcy period), the receipt of which is delayed by excess withholding. Were it not for a miscalculation of tax liability, the money would have been available in the pre-bankruptcy period to pay the bankrupt's debts. *See Kokoszka v. Belford, supra,* 417 U.S. at 648, 94 S.Ct. 2431. The earned income credit is given effect through a refund, but it is not a refund of taxes previously paid. Most of the people who receive the credit have little or no tax liability; part or all of what they receive exceeds the amounts withheld from their earnings. The effect of the earned income credit legislation is to put money in the pockets of certain needy taxpayers after tax returns are filed, and not to reduce their tax burden during the tax year. The Senate Committee on Finance stated:

"Since the credit is refundable, eligible individuals with low incomes on which little or no income tax is due are to receive a cash payment equal to the amount of the credit reduced by any tax due. . . . It is hoped that through the simplicity of [the 1040A] form, plus efforts by the Internal Revenue Service to build public awareness of the availability of the credit, all eligible taxpayers will file for the credit available to them." S.Rep.No.94–36, *supra,* at 35, *reprinted in* [1975] U.S.Code Cong. & Admin.News 54, 85–86.

Like the vacation pay considered in *Lines v. Frederick, supra,* and unlike the refund of excess withholding of income taxes, the earned income credit is meant to supplement wages in a *future* period. *See Kokoszka v. Belford, supra,* 417 U.S. at 648, 94 S.Ct. 2431.

The credit is only "rooted in the pre-bankruptcy past" to the extent that one must have earned income in the tax year to receive it, and the amount received as wages determines the amount of the credit.[1] The earned income credit creates an

---

1. Bankruptcy Judge Thinnes, in a well-reasoned opinion, has pointed out that

"this is but a superficial tie to the pre-bankruptcy past. The Court, in *Kokoszka,* distinguished between payments designed to pro-

vide basic support at some future period and payments which had their source in past wages or other assets of the bankrupt. While the amount of the earned income *is the measure* for calculating the size of the earned

incentive to work in the tax year, but its benefits are to be enjoyed in the following year. For the bankrupt taxpayer who is eligible to receive it, the earned income credit helps to provide a "fresh start" in the post-bankruptcy period. In *Lines v. Frederick, supra,* accrual of vacation pay entitled the bankrupt to earn wages without working; the earned income credit adds to the income earned by the bankrupt after bankruptcy.

■ Though it is given effect through the income tax laws, the earned income credit is in substance an item of social welfare legislation, intended to provide low-income families with "the very means by which to live," *Goldberg v. Kelly,* 397 U.S. 254, 264, 90 S.Ct. 1011, 1018, 25 L.Ed.2d 287 (1970); *see Lines v. Frederick, supra,* 400 U.S. at 20, 91 S.Ct. 113. It is not available to all taxpayers, but only to those who maintain a household containing a dependent child. The legislative purposes to aid a certain group of taxpayers, to stimulate the economy (through purchases made after the tax year), and to provide an incentive to work would all be frustrated if the earned income credit were treated as pre-bankruptcy "property" in the hands of a bankrupt taxpayer. Since Congress was considering the plight of those who are always on the verge of insolvency, it is inconceivable that the purpose of the Bankruptcy Act, *see Segal v. Rochelle, supra,* should be construed to accomplish that frustration.

When originally enacted, the earned income credit was to be taken into account as "other income" under the Social Security Act and thus would cause a reduction in payments of aid to families with dependent children for the month in which it was to be received. *See* S.Rep.No.94–36, *supra,* at 35, *reprinted in* [1975] U.S.Code Cong. & Admin.News 54, 85–86. Congress later enacted § 2(d) of the Revenue Adjustment Act of 1975, providing that funds received under I.R.C. § 43

"shall not be taken into account as income or receipts for purposes of determining . . . eligibility . . . or the amount or extent of benefits or assistance, under any Federal program or under any State or local program financed in whole or in part with Fed eral funds, but only if [the taxpayer] . . . is a recipient of benefits or assistance under such a program for the month before the month in which such refund is made." Pub.L.No.94–164, § 2(d), 89 Stat. 970, 972 (1975).

Thus Congress indicated that needy families should receive the earned income credit in addition to any public assistance they are eligible to receive at the time the credit is paid. This distinguishes the earned income credit from all other tax "refunds," which are considered "other income" for purposes of calculating eligibility for public assistance, and further emphasizes the importance to Congress of stimulating spending, supporting needy families, and providing an incentive to work through the earned income credit.

### III.

■ The Bankruptcy Judge noted that Congress intended the amount of the earned income tax credit to approximately equal the sum of employee and employer contributions to the social security tax for the first $4,000 of income. *See* S.Rep.No. 94–36, *supra,* at 3, 11, *reprinted in* [1975] U.S.Code Cong. & Admin.News 54, 56, 64. He reasoned that "[t]he return of social security tax payments is as much a tax refund as the refund which comes from the withholding tax," Memorandum and Order at 4, and concluded that the earned income credit is "property" under § 70a(5). But the Bankruptcy Judge paid scant attention to the clear distinctions between the two payments that I have discussed. Furthermore, the fact that the amount of the

income credit, the *source* of the credit is not wages or any other pre-bankruptcy asset owned by the bankrupt." *In re Spooner,* 9 Collier Bankr.Cas. 418, 421 (N.D.Iowa 1976) (emphasis in original).

He concluded that the earned income credit was not "property" under § 70a(5).

earned income credit roughly equals the amount of social security tax for some taxpayers[2] does not make the credit a *refund* of the social security tax. No money is taken from social security Trust Funds, *see Flemming v. Nestor,* 363 U.S. 603, 609, 80 S.Ct. 1367, 4 L.Ed.2d 1435 (1960), to pay for the earned income credit. In addition, the amount of the earned income credit far exceeds the taxpayer's contributions to social security; the remainder, which is equivalent to the employer's contributions, cannot possibly be "refunded" to the taxpayer because it was never taken from him.[3] The Bankruptcy Judge's statement that "the wage earner bears the brunt of the contributions which his employer is required to make," Memorandum and Order at 4, may be supported by some economic theories, but it has no basis in law.

It is true that the earned income credit was intended in part to "compensate low-income wage earners (and low-income self-employed persons) for the social security taxes (or self-employment taxes) they pay." S.Rep.No.94–36, *supra,* at 33, *reprinted in* [1975] U.S.Code Cong. & Admin.News 54, 83. But this "compensation," intended to offset the burden of social security taxes and mitigate their regressive nature, does not constitute a refund or reduction of the social security tax:

" . . . [Y]our committee agrees with the House that it is appropriate to use the income tax system to offset the impact of the social security taxes on low-income persons in 1975 by adopting a refundable income tax credit against earned income. Although the earned income credit may be viewed as a method to help compensate wage earners of low income families for the social security taxes they pay, your committee wishes to have it clearly understood that *this provision of the bill is not intended to provide a way of reducing social security taxes* paid by low income wage earners. The financing of the social security program is a matter which the committee will be required to review in depth in subsequent legislation." *Id.* (emphasis added)

The legislative history also indicates clearly that reducing the burden of the social security tax was not the primary purpose of the earned income credit:

" . . . [T]he committee agrees with the House that this tax reduction bill should provide some relief at this time from the social security tax and the self-employment tax for low income individuals. The committee believes, however, that *the most significant objective of the provision should be to assist in encouraging people to obtain employment,* reducing the unemployment rate and reducing

---

**2.** The amount of the credit is not directly tied to the amount of social security taxes collected. For the taxpayer earning up to $4,000, the amounts are approximately equal. But as income rises above $4,000, the amount of social security taxes increases and the amount of the earned income credit drops.

**3.** Even if the Bankruptcy Judge were correct in stating that the earned income credit is a refund of social security payments, the credit would still not be persuasively analogous to a refund of income taxes, because social security taxes perform an entirely different function than income taxes. Although called a tax and collected in the same way as a tax, the payroll deduction for social security is analogous to an insurance premium payment for old-age, survivors and disability insurance, provided by the Federal Insurance Contributions Act (F.I.C.A.), I.R.C. §§ 3101–3126:

"The Social Security system may be accurately described as a form of social insurance, enacted pursuant to Congress' power to 'spend money in aid of the "general welfare," ' *Helvering v. Davis,* [301 U.S. 619, 640, 57 S.Ct. 904, 81 L.Ed. 1307 (1937)], whereby persons gainfully employed, and those who employ them, are taxed to permit the payment of benefits to the retired and disabled, and their dependents." *Flemming v. Nestor,* 363 U.S. 603, 609, 80 S.Ct. 1367, 1372, 4 L.Ed.2d 1435 (1960).

When an employer's challenge to the constitutionality of the social security tax was rejected in *Helvering v. Davis, supra,* the opinion of the Court was written by Mr. Justice Cardozo, to whom it was always important to infuse law with vitality by relating it to the purpose which it was designed to effectuate. He noted, "The hope behind this statute is to save men and women from the rigors of the poor house as well as from the haunting fear that such a lot awaits them when journey's end is near." 301 U.S. at 641, 57 S.Ct. at 909.

the welfare rolls. . . . " *Id., reprinted in* [1975] U.S.Code Cong. & Admin. News 54, 84 (emphasis added).

## IV.

The values, variables and mechanisms expressed and enacted by the Congress as set forth above lead me to conclude unhesitatingly that the earned income credit is not a tax refund. It is a payment made to low-income taxpayers to help them meet basic costs of life. When made to a bankrupt, this payment has no meaningful roots in the pre-bankruptcy past, but serves to provide a "fresh start" after bankruptcy. Therefore the sum of $228.80, representing the earned income credit paid to Mrs. Searles, is not "property" within the meaning of § 70a(5) of the Bankruptcy Act. The order of the Bankruptcy Judge that it be turned over to the Trustee is reversed, and the case is remanded for further proceedings consistent with this opinion.

SO ORDERED.