731 F.2d 105
 84-1 USTC P 9306
 Elinor NELSON, Douglas Spells, Dennis Eaton, Phillip Corso,
individually and on behalf of those similarly
situated, Appellees,
v.
Donald REGAN, Secretary of the United States Department of
Treasury; Margaret M. Heckler, Secretary of the United
States Department of Health and Human Services; and Ronald
Manning, Commissioner of the Department of Human Resources
of the State of Connecticut, Appellants.
 Nos. 409, 410, Dockets 83-6170, 83-6240.
 United States Court of Appeals,
Second Circuit.
 Argued Nov. 16, 1983.
Decided March 13, 1984.
 
 Jo-Ann Horn, Tax Div., Dept. of Justice, Washington, D.C. (Glenn L. Archer, Jr., Asst. Atty. Gen., Washington, D.C., Alan H. Nevas, U.S. Atty., D. Conn., New Haven, Conn., Michael L. Paup, Richard Farber, Dept. of Justice, Washington, D.C., of counsel), for federal appellants.
 Joseph X. Dumond, Jr., Asst. Atty. Gen., Hartford, Conn. (Joseph I. Lieberman, Atty. Gen., Paige J. Everin, Asst. Atty. Gen., Hartford, Conn., of counsel), for state appellants.
 Michael O. Sheehan, New Haven Legal Assistants Ass'n, Inc., New Haven, Conn. (Joanne Miner, Conn. Legal Services, Danielson, Conn.), for appellees.
 Before OAKES and MESKILL, Circuit Judges, and NEAHER, District Judge.*
 OAKES, Circuit Judge:
 
 
 1
 This appeal involves the so-called "tax intercept" program. Under this program, federal tax refunds due to persons who have failed to make support payments, the rights to which have been assigned to a state that has provided aid to those to whom support is due, are "intercepted" by the Internal Revenue Service on the state's behalf. Accordingly, the tax refunds which would ordinarily go to the non-support paying taxpayer are instead paid to the state which, under the aid-to-needy-families-with-children program, has in effect met the individual's obligations.[1]
 
 
 2
 A class action was instituted by four individuals ("the taxpayers") against the Secretary of the Treasury, the Secretary of Health and Human Services, and the Commissioner of the Connecticut Department of Human Resources. The class consists of persons whose refunds which are due and owing have been withheld by the IRS, so that the refunds could be offset against the amount of child support owed to the State of Connecticut. The taxpayers complain that section 6402(c) of the Internal Revenue Code, supra note 1, and its counterpart section 464(a) of the Social Security Act, supra note 1, deprive them of their property without due process of law in that the state does not give them notice or an opportunity for a pre-offset hearing. They also allege that to the extent that their refunds were attributable to the earned income credit provided by section 43 of the Internal Revenue Code, 26 U.S.C. Sec. 43 (1976), the refunds were outside the scope of the intercept program. Finally, they claim that in cases involving joint income tax returns, the Internal Revenue Service failed to apportion overpayments reflected as between the spouse obligated for the past due child support and the nonobligated spouse, consequently failing to refund the portion of overpayments attributable to nonobligated spouses.
 
 
 3
 The government conceded in the district court that an apportionment was necessary in the case of a joint return. The government advised the court that upon receipt of a claim for refund filed by the nonobligated spouse, the IRS in the future would compute the portion of the overpayment attributable to the spouse and refund that portion. See Rev.Rul. 74-611, 1974-2 C.B. 399 and Rev.Rul. 80-7, 1980-1 C.B. 296.
 
 
 4
 On January 14, 1983, the district court, Ellen Bree Burns, Judge, issued a ruling reported as Nelson v. Regan, 560 F.Supp. 1101 (D.Conn.1983). The court denied the defendants' motions to dismiss for lack of jurisdiction, and certified the suit as a class action. It also ruled on cross-motions for summary judgment, and issued a declaratory judgment that the intercept program, as implemented by the State of Connecticut, violated the due process rights of the plaintiff class. In particular, the court held that the intercept program did not meet due process requirements for notice of possible defenses and procedures for asserting those defenses. It held further that the state must provide an opportunity for the taxpayers to be heard at a meaningful time and in a meaningful manner. The court also rejected the State's claim that the Eleventh Amendment would be violated by requiring a hearing, holding that the cost of providing notice and administrative hearings are ancillary and not barred by the Eleventh Amendment. Finally, with regard to the substantive defense raised by taxpayers, the court held that refunds attributable to the earned income credit were not overpayments for the purposes of section 6402(c), and therefore that such payments could not be intercepted.
 
 
 5
 On April 22, 1983, the court issued its "Ruling on Remedy and Final Order," denying the federal defendants' motion for reconsideration of the prior ruling on jurisdiction and holding that amounts owed an individual as an earned income credit are not overpayments for purposes of section 6402(c). The court went on to set forth detailed notice and hearing requirements, including a requirement that in the case of joint returns, the nonobligated spouse must be notified individually of his or her right to apply for a refund. Accepting a subsequent stipulation of the parties on June 13, 1983, the court amended its April 22 order to eliminate the requirement of mailing individual notices to nonobligated spouses in the case of joint returns.
 
 
 6
 On appeal the federal defendants renew their jurisdictional claims. They argue first that to the extent the taxpayers sought a refund of their claimed overpayments, their suit is barred for failure to comply with the jurisdictional requirements of section 7422(a) of the Internal Revenue Code of 1954,[2] which states that no suit may be maintained for the recovery of any tax until a claim for refund has been duly filed with the IRS. Thus, they argue, any refund suit instituted prior to the filing of a claim for refund, or after the claim has been filed but prior to the expiration of the six-month period set forth in section 6532 of the Code, 26 U.S.C. Sec. 6532(a)(1) (1976), is outside the scope of the government's consent to be sued and, accordingly, is barred by the doctrine of sovereign immunity. See, e.g., Altman v. Connally, 456 F.2d 1114 (2d Cir.1972). See also United States v. Freedman, 444 F.2d 1387, 1388 (9th Cir.), cert. denied, 404 U.S. 992, 92 S.Ct. 538, 30 L.Ed.2d 544 (1971).
 
 
 7
 We agree with the district court that the intercept program does not involve a claim that a tax has been "erroneously or illegally assessed or collected" within the meaning of 26 U.S.C. Sec. 7422(a). There is no dispute as to the amount of the taxpayers' federal tax liability, nor as to the amount of refund to which they are entitled. As Judge Burns said, "the federal-state intercept program takes effect only after the assessment and collection of federal income taxes. The federal government at that point has no interest in the refunds." 560 F.Supp. at 1103. We think the district court's reasoning on this point is eminently sensible. See id. at 1104 & n. 2.[3]
 
 
 8
 The federal defendants next argue that the district court lacked jurisdiction to grant declaratory relief because 28 U.S.C. Sec. 2201 (1976), which authorizes declaratory relief, precludes such relief "with respect to Federal taxes." See, e.g., Jolles Foundation, Inc. v. Moysey, 250 F.2d 166, 169 (2d Cir.1957). Moreover, they contend that the Treasury Regulations promulgated under section 6402(c), supra note 1, provide that "[p]ast-due support shall be collected by offset under section 6402(c) and this section in the same manner as if it were a liability for tax imposed by the Internal Revenue Code of 1954 ...." 48 Fed.Reg. 22708, 22709 (1983) (to be codified at 26 C.F.R. Sec. 301.6402-5(a)(1)). Thus, they argue, disputes concerning the withholding of refunds must be litigated in a properly instituted suit for refund, a variation of their argument under section 7422 of the Internal Revenue Code.
 
 
 9
 As noted by the district court, the Declaratory Judgment Act's prohibition against relief "with respect to Federal taxes," like the Anti-Injunction Act, is designed to protect the "Government's need to assess and collect taxes as expeditiously as possible with a minimum of pre-enforcement judicial interference." Bob Jones University v. Simon, 416 U.S. 725, 736, 94 S.Ct. 2038, 2046, 40 L.Ed.2d 496 (1974) (referring to purpose of Anti-Injunction Act). This need is not involved here, since the intercept program takes place only after the assessment and collection of taxes. See 560 F.Supp. at 1103-04. That the Treasury Regulations treat the offset for past due support as if it were a liability for tax does not make the instant suit one for a refund. The only relief sought against the Secretary of Treasury or given by the court below is to order him to refrain from transferring the tax overpayment to the Connecticut Department of Human Resources until the class members have been notified by the State of the intercept program and have been given an opportunity by the State to challenge an offset at a hearing.
 
 
 10
 The federal defendants raise still another version of this argument which concedes that the Anti-Injunction Act is inapplicable. They argue that there can be no injunctive relief here because there is an adequate legal remedy available to the taxpayers, namely a suit for a refund. Beacon Theatres, Inc. v. Westover, 359 U.S. 500, 506-07, 79 S.Ct. 948, 954-55, 3 L.Ed.2d 988 (1959). What the taxpayers seek is not a refund, however, but notice and an opportunity to contest the State's offset rights at the state level before the IRS pays their tax refunds to the State. A suit for refund would not provide such relief. To the extent that Vidra v. Egger, 575 F.Supp. 1305 (E.D.Pa.1982), is to the contrary, we disagree with it.
 
 
 11
 In addition, the federal defendants claim that the district court erred in certifying this suit as a class action, relying on the view that no claim for refund has been filed with the IRS under section 7422(a) and thus that the suit was premature under section 6532. See Lewis v. Sandler, 498 F.2d 395, 399-400 (4th Cir.1974). As we have previously said, however, this is not a suit for a refund. The case, rather, involves statutory procedures whereby a third party, consisting in this instance of the state of Connecticut, intervenes to have property otherwise indisputably belonging to the taxpayer, a tax refund due and payable, diverted to it under the tax intercept program. The primary relief sought is against the State of Connecticut. Relief against the federal government requires only that the IRS provide information on the amount of tax refunds attributable to the nondelinquent spouse's income, a matter on which the parties have agreed, except as it involves earned income credits.
 
 
 12
 We also think the court reached the correct result in ruling on the State's Eleventh Amendment claim of immunity. To be sure, a sovereign state or state agency cannot be sued for damages under the Eleventh Amendment without its consent or in the absence of a waiver of immunity, at least when payments out of its treasury are sought. Edelman v. Jordan, 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974); Ford Motor Co. v. Department of the Treasury, 323 U.S. 459, 65 S.Ct. 347, 89 L.Ed. 389 (1945). See also State of Alabama v. Pugh, 438 U.S. 781, 98 S.Ct. 3057, 57 L.Ed.2d 1114 (1978). The state defendants argue that the taxpayers seek a return of their refunds from the State, but this is not the case at all. What they seek is injunctive relief against the State in connection with the procedures by which their refunds due from the federal government are intercepted. As in Quern v. Jordan, 440 U.S. 332, 348, 99 S.Ct. 1139, 1149, 59 L.Ed.2d 358 (1979), whether a recipient of notice decides to take advantage of state procedures is left completely to the discretion of that particular class member; the federal court plays no role in that decision. Whether the class member receives retroactive benefits rests entirely with the state, its agencies, courts, and legislatures, not with the federal court. Moreover, the fact that the state will incur administrative expenses providing the required notice and hearing does not mean that the Eleventh Amendment is violated. Quern, 440 U.S. at 347, 99 S.Ct. at 1148; see also Milliken v. Bradley, 433 U.S. 267, 97 S.Ct. 2749, 53 L.Ed.2d 745 (1977). For the reasons stated by the district court in ruling on the motion for class certification and the cross-motions for summary judgment, 560 F.Supp. 1105-09, we agree with the court's decision requiring notice and hearing to the individuals affected by the tax intercept program.
 
 
 13
 The district court also held that the tax intercept program does not apply to refunds or payments of earned income credits. The earned income credit was first enacted as section 204(a) of Pub.L. 94-12, the Tax Reduction Act of 1975, 26 U.S.C. Sec. 43 (1976). As originally enacted, it allowed a credit in an amount equal to 10% of the first $4,000 earned by eligible individuals. To be eligible for the credit, a person had to have a dependent child residing with him or her.
 
 
 14
 The purpose of the credit was to provide a "work-bonus" for families who pay little or no income tax, are the most hurt by rising food and energy costs, and are subject to the social security payroll tax. S.Rep. No. 94-36, 94th Cong., 1st Sess. 11 (1975), reprinted in 1975 U.S.Code Cong. & Ad.News 54, 63-64. The credit was intended to provide an incentive for low income people to work rather than to receive federal assistance. It was also hoped that the credit would stimulate the economy because low income people were "expected to spend a large fraction of their increased disposable incomes." S.Rep. at 11, reprinted in U.S.Code Cong. & Ad.News at 64.
 
 
 15
 The difficult technical question we have before us is whether earned income credits are includable in the amount of the refund against which delinquent support payments may be offset under the intercept program. The district court, holding that the congressional purposes would be undercut if the credit were intercepted, read the word "overpayment," broadly defined in 26 U.S.C. Sec. 6401,[4] to be limited in 26 U.S.C. Sec. 6402, supra note 1, by the phrase "overpayment to be refunded to the person making the overpayment," along with the less inclusive phrase used in section 464 of the Social Security Act, supra note 1. The court noted that the provisions of 26 U.S.C. Sec. 6402 and 42 U.S.C. Sec. 664, but not 26 U.S.C. Sec. 6401, were part of section 2331 of the Omnibus Budget Reconciliation Act of 1981, which established the tax intercept program. The court noted that in contrast section 6401 was a general provision in the chapter on Abatements, Credits and Refunds of the Internal Revenue Code, governing the tax refund process. See 560 F.Supp. 1110-11. But see Sorenson v. Secretary of Treasury, 557 F.Supp. 729, 734 (N.D.Wash.1982), (reaching conclusion that refunds due to earned income credit are subject to interception), appeal docketed, No. 83-3694 (9th Cir. Feb. 10, 1984).
 
 
 16
 We agree with Judge Burns. The statement by the Sorenson court, that the term "overpayment" is a "word of art," id., does not meet Judge Burns' argument. Moreover, section 6402(c) expressly relates back to section 464 of the Social Security Act, which states that the Secretary of the Treasury shall determine whether any amounts "as refunds of Federal taxes paid" are payable to the taxpayer. 42 U.S.C. Sec. 664(a). Section 464(a) then goes on to refer to withholding "from such refunds" an amount equal to the past due support. Read together these two statutes support the district court's conclusion that the intercept provisions do not relate to earned income credits. This conclusion is fortified, as the district court pointed out, by the social welfare needs that Congress sought to meet in enacting the earned income credit.
 
 
 17
 Concededly, however, the question before us is a close one. We recognize that in the definition of "overpayment" in section 6401(b) of the Code, supra note 4, express reference is had to the earned income credit for the purposes of computing an overpayment. We also take due note that 26 U.S.C. Sec. 6401(c) provides that "an amount paid as tax shall not be considered not to constitute an overpayment solely by reason of the fact that there was no tax liability in respect of which such amount was paid." (Emphasis supplied.)We are also aware that our decision involves treating an earned income credit as an "overpayment" for some purposes though not for purposes of the tax intercept statutes. Logic and symmetry have never been the hallmarks of the Internal Revenue Code and Social Security Act, however. Given the option provided by the congressional language of Internal Revenue Code section 6401, on the one hand, and section 6402 of the Code, coupled with section 464 of the Social Security Act, on the other, we believe that the latter more appropriately accords with the congressional purpose in enacting the earned income credit. As pointed out by Judge Blumenfeld in holding that the earned income credit is not "property" of a bankrupt under the Bankruptcy Act:
 
 
 18
 The values, variables and mechanisms expressed and enacted by the Congress ... lead me to conclude unhesitantly that the earned income credit is not a tax refund. It is a payment made to low-income taxpayers to help them meet basic costs of life.
 
 
 19
 In re Searles, 445 F.Supp. 749, 755 (D.Conn.1978).[5]
 
 
 20
 Judgment affirmed.
 
 
 
 *
 Of the Eastern District of New York, sitting by designation
 
 
 [1]
 42 U.S.C. Sec. 602(a) (1976) provides in part:
 A State plan for aid and services to needy families with children must ... (26) provide that, as a condition of eligibility for aid, each applicant or recipient will be required--
 (A) to assign the State any rights to support from any other person such applicant may have (i) in his own behalf or in behalf of any other family member for whom the applicant is applying for or receiving aid, and (ii) which have accrued at the time such assignment is executed....
 Section 464 of the Social Security Act, 42 U.S.C. Sec. 664 (Supp. V 1981), a part of Sec. 2331 of the Omnibus Budget Reconciliation Act of 1981, Pub.L. No. 97-35, 95 Stat. 357 (1981), provides:
 Collection of past-due support from Federal tax refunds
 (a) Procedures applicable; distribution
 Upon receiving notice from a State agency administering a plan approved under this part that a named individual owes past-due support which has been assigned to such State pursuant to section 602(a)(26) of this title, the Secretary of the Treasury shall determine whether any amounts, as refunds of Federal taxes paid, are payable to such individual (regardless of whether such individual filed a tax return as a married or unmarried individual). If the Secretary of the Treasury finds that any such amount is payable, he shall withhold from such refunds an amount equal to the past-due support, and pay such amount to the State agency (together with notice of the individual's home address) for distribution in accordance with section 657(b)(3) of this title.
 (b) Regulations; contents, etc.
 The Secretary of the Treasury shall issue regulations, approved by the Secretary of Health and Human Services, prescribing the time or times at which States must submit notices of past-due support, the manner in which such notices must be submitted, and the necessary information that must be contained in or accompany the notices. The regulations shall specify the minimum amount of past-due support to which the offset procedure established by subsection (a) of this section may be applied, and the fee that a State must pay to reimburse the Secretary of the Treasury for the full cost of applying the offset procedure, and provide that the Secretary of the Treasury will advise the Secretary of Health and Human Services, not less frequently than annually, of the States which have furnished notices of past-due support under subsection (a) of this section, the number of cases in each State with respect to which such notices have been furnished, the amount of support sought to be collected under this subsection by each State, and the amount of such collections actually made in the case of each State.
 (c) Definition
 As used in this part the term "past-due support" means the amount of a delinquency, determined under a court order, or an order of an administrative process established under State law, for support and maintenance of a child, or of a child and the parent with whom the child is living.
 26 U.S.C. Sec. 6402 (1976 & Supp. V 1981), as amended, also a part of Sec. 2331 of the Omnibus Budget Reconciliation Act of 1981, provides:
 Authority to make credits or refunds
 (a) General rule
 In the case of any overpayment, the Secretary, within the applicable period of limitations, may credit the amount of such overpayment, including any interest allowed thereon, against any liability in respect of an internal revenue tax on the part of the person who made the overpayment and shall, subject to subsection (c), refund any balance to such person.
 (b) Credits against estimated tax
 The Secretary is authorized to prescribe regulations providing for the crediting against the estimated income tax for any taxable year of the amount determined by the taxpayer or the Secretary to be an overpayment of the income tax for a preceding taxable year.
 (c) Offset of past-due support against overpayments
 The amount of any overpayment to be refunded to the person making the overpayment shall be reduced by the amount of any past-due support (as defined in section 464(c) of the Social Security Act) owed by that person of which the Secretary has been notified by a State in accordance with section 464 of the Social Security Act. The Secretary shall remit the amount by which the overpayment is so reduced to the State to which such support has been assigned and notify the person making the overpayment that so much of the overpayment as was necessary to satisfy his obligation for past-due support has been paid to the State. This subsection shall be applied to an overpayment prior to its being credited to a person's future liability for an internal revenue tax.
 
 
 [2]
 I.R.C. Sec. 7422(a) states:
 (a) No suit prior to filing claim for refund
 No suit or proceeding shall be maintained in any court for the recovery of any internal revenue tax alleged to have been erroneously or illegally assessed or collected, or of any penalty claimed to have been collected without authority, or of any sum alleged to have been excessive or in any manner wrongfully collected, until a claim for refund or credit has been duly filed with the Secretary according to the provisions of law in that regard, and the regulations of the Secretary established in pursuance thereof.
 26 U.S.C. Sec. 7422(a) (1976).
 
 
 [3]
 In the court below the federal defendants made the argument that the action is barred by the Anti-Injunction Act, section 7421(a) of the Internal Revenue Code of 1954. They have not renewed this argument on appeal
 
 
 [4]
 26 U.S.C. Sec. 6401 (1976 & Supp. V 1981) provides as follows:
 Amounts treated as overpayments
 (a) Assessment and collection after limitation period.
 The term "overpayment" includes that part of the amount of the payment of any internal revenue tax which is assessed or collected after the expiration of the period of limitation properly applicable thereto.
 (b) Excessive credits
 If the amount allowable as credits under sections 31 (relating to tax withheld on wages) and 39 (relating to certain uses of gasoline, special fuels, and lubricating oil), and 43 (relating to earned income credit), exceeds the tax imposed by subtitle A (reduced by the credits allowable under subpart A of part IV of subchapter A of chapter 1, other than the credits allowable under sections 31, 39, and 43), the amount of such excess shall be considered an overpayment....
 (c) Rule where no tax liability
 An amount paid as tax shall not be considered not to constitute an overpayment solely by reason of the fact that there was no tax liability in respect of which such amount was paid.
 
 
 [5]
 Judge Blumenfeld reasoned in part as follows:
 When originally enacted, the earned income credit was to be taken into account as "other income" under the Social Security Act and thus would cause a reduction in payments of aid to families with dependent children for the month in which it was to be received. See S.Rep. No. 94-36 [94th Cong., 1st Sess.], at 35, reprinted in [1975] U.S.Code Cong. & Admin.News 54, 85-86. Congress later enacted Sec. 2(d) of the Revenue Adjustment Act of 1975, providing that funds received under I.R.C. Sec. 43
 "shall not be taken into account as income or receipts for purposes of determining ... eligibility ... or the amount or extent of benefits or assistance, under any Federal program or under any State or local program financed in whole or in part with Federal funds, but only if [the taxpayer] ... is a recipient of benefits or assistance under such a program for the month before the month in which such refund is made." Pub.L. No. 94-164, Sec. 2(d), 89 Stat. 970, 972 (1975).
 Thus Congress indicated that needy families should receive the earned income credit in addition to any public assistance they are eligible to receive at the time the credit is paid. This distinguishes the earned income credit from all other tax "refunds," which are considered "other income" for purposes of calculating eligibility for public assistance, and further emphasizes the importance to Congress of stimulating spending, supporting needy families, and providing an incentive to work through the earned income credit.
 
 
 [445]
 F.Supp. at 753