Richard **COUGHLIN, et al., Plaintiffs,**

**v.**

Donald **REGAN, et al., Defendants.**

**Civ. No. 82–0308–B.**

United States District Court,
D. Maine.

April 11, 1984.

Frederick B. Stocking, Pine Tree Legal Assistance, Inc., Machias, Maine, Hugh Calkins, Pine Tree Legal Assistance, Inc., Bangor, Maine, Linda Christ, Lynn Dondis, Pine Tree Legal Assistance, Inc., Augusta, Maine, for plaintiffs.

Raymond E. Ritchie, Diane E. Doyen, James Eastman Smith, Asst. Attys. Gen., Dept. of Human Services, Augusta, Maine, William H. Browder, Jr., Asst. U.S. Atty., Bangor, Maine, for defendants.

## MEMORANDUM DECISION ON MOTIONS TO DISMISS

CYR, Chief Judge.

### STATEMENT OF THE CASE

The present class action challenges certain aspects of the federal-state "intercept" program established by the Omnibus Budget Reconciliation Act of 1981 (OBRA), Pub.L. No. 97–35, §§ 2331, 2332, 95 Stat. 860–63. OBRA empowers the United States Treasury Department (Treasury) to intercept federal income tax *overpayments* due child-support obligors, in order to facilitate reimbursement of the states for contributions made under the Aid to Families with Dependent Children (AFDC) program.[1] Plaintiffs challenge the Treasury practice of intercepting that portion of a tax overpayment made by a nonobligated spouse who files a joint tax return with a

---

1. AFDC recipients are required to assign their child-support benefits to the states. *See* 42 U.S. C.S. § 602(a)(26)(A).

child-support obligor. Plaintiffs further challenge the interception and transfer of any portion of their earned income credit (EIC).

Plaintiffs seek the return of any intercepted EIC, a judicial declaration that past-due child support may not be recovered either from plaintiffs' EIC's or from any portion of a tax refund due a nonobligated spouse, and permanent injunctive relief against defendants' "unlawful" conduct.

## MOTIONS TO DISMISS

Federal defendants moved to dismiss on the following grounds: (1) the action is moot as to the nonobligated plaintiffs; (2) sovereign immunity bars the action; (3) the Court lacks jurisdiction of the claims of the obligated plaintiffs by virtue of 26 U.S.C. § 6305(b); (4) the action is barred by the Anti-Injunction Act, 26 U.S.C. § 7421(a), and by the Declaratory Judgment Act, 28 U.S.C. § 2201; and (5) the complaint fails to state a claim upon which relief can be granted.[2]

The motion of the state defendant seeks dismissal on grounds (1), (3) and (5) advanced by the federal defendants, and on the further ground that the state defendant is not amenable to suit in this action by virtue of the Eleventh Amendment to the United States Constitution.[3]

## FACTS

Plaintiff Richard Coughlin owes an unspecified sum to the State of Maine for past-due support.[4] In 1981 Coughlin earned $2,431.62 and his wife, Jean, earned $2,450.16. For federal income tax purposes, $137.84 was withheld from Jean's earnings during 1981 and $39.10 was withheld from Richard's earnings. On their 1981 joint tax return the Coughlins were entitled to a $488 EIC.[5] Since they owed no taxes for 1981 the Coughlins requested a refund of $664.94, representing their EIC of $488 and the total of their combined withheld earnings, $176.94.

On March 26, 1982 the Internal Revenue Service (IRS), through the State of Maine Department of Human Services (DHS), notified the Coughlins that their entire federal tax refund was to be applied toward Richard Coughlin's past-due support obligation. After filing an IRS Form 1040X, requesting a return of their EIC and of Jean's withheld earnings, the Coughlins received a check from the IRS, which they believe represents Jean's "share" of the EIC, plus her withheld earnings.[6] Treasury did not explain its calculation of the amount returned.[7]

In 1982 Jean Coughlin earned $4,086.27 and Richard earned $2,854.72. The Coughlins requested a tax refund of $504.90 on

**2.** Federal defendants have since withdrawn their sovereign immunity defense to plaintiffs' constitutional claims, as well as their defenses under Code § 6305 and the Anti-Injunction Act. State defendant continues to press its defense under Code § 6305. Federal defendants press their sovereign immunity defense to plaintiffs' claims for the return of their intercepted EIC's. As the Court finds that interception of the EIC's of an obligated spouse is lawful, it need not address the sovereign immunity defense raised by the federal defendants.

Since matters outside the pleadings are presented and have not been excluded by the Court, defendants' motions to dismiss are treated as motions for summary judgment. *See* Fed. R.Civ.P. 12(c) & 56.

**3.** State defendant presses its Eleventh Amendment defense to plaintiffs' claims for injunctive relief and for the return of the intercepted EIC's. *See Pennhurst State School & Hospital v. Halderman,* —— U.S. ——, ——, 104 S.Ct. 900,

908, 79 L.Ed.2d 67 (1984). As the Court finds that interception of the obligated plaintiffs' EIC's was proper and since, on the present record, the Court is not required to rule on plaintiffs' demand for injunctive relief, it need not address the Eleventh Amendment issue. *See* note 24 *infra.*

**4.** The complaint implies, but does not allege, that child support was owed to an AFDC recipient.

**5.** In order to be eligible for an EIC, married couples must file a joint return. *See* 26 U.S.C. § 43.

**6.** The complaint alleges neither the amount of the IRS check nor its payee.

**7.** Computation of the nonobligated spouse's share of an overpayment is made pursuant to Rev.Rul. 80–7, 1980–1 Cum.Bull. 296.

their 1982 joint tax return, $384 of which represented their EIC. As of April 19, 1983 the IRS had not notified the Coughlins of any intercept of their 1982 refund, although an IRS employee informed Jean Coughlin that their refund would again be remitted to the State of Maine.[8]

Plaintiff Maurice Galen owes the State of Maine past-due support. In 1981 he earned $4,007.74, of which $483.60 was withheld for federal income tax purposes. In the same year his wife, Eleanor, earned $4,143.75, of which $422.10 was withheld for federal income tax purposes. On their 1981 joint tax return the Galens requested a tax refund of $660.70 (net after deduction of $245 for taxes due), and the return of their EIC of $228. On May 13, 1982 the IRS, through DHS, advised that the entire amount due the Galens would be applied to satisfy Maurice Galen's past-due support obligations. In July 1982 the Galens filed an IRS Form 1040X requesting the return of Eleanor's withheld earnings, plus their entire EIC. In September 1982 Eleanor received, without explanation, an IRS check in the amount of $438.13, which she believes represents her "share" of the EIC, plus her net (after-tax) earnings withheld.

In 1982 Eleanor earned $2,702.94 and Maurice had no earnings. On their 1982 joint return the Galens requested a refund of $63.60, and the return of their EIC of $273. On April 15, 1983 the IRS advised that the entire amount due the Galens would be remitted to the State of Maine.[9]

## STATUTORY SCHEME

*Jeopardy Assessments of Certain Liability*

Section 452(b) of the Social Security *Act*, 42 U.S.C. § 652(b), was added by section 101(a) of Public Law No. 93–647, 88 Stat. 2351, on January 4, 1975, and, as amended by section 2332(b)(2) of OBRA, reads as follows:

**8.** The undisputed facts relating to the Coughlins' 1982 federal income taxes are contained in the affidavit of Jean Coughlin, which does not state when the 1982 refund request was filed.

(b) The Secretary shall, upon the request of any State having in effect a State plan approved under this part [42 USCA §§ 651–660], certify to the Secretary of the Treasury for collection, pursuant to the provisions of section 6305 of the Internal Revenue code of 1954 [26 USCS § 6305] the amount of any child support obligation (including any support obligation with respect to the parent who is living with the child and receiving aid under the State plan approved under part A [42 USCS § 601 et seq.]) which is assigned to such State or is undertaken to be collected by such State pursuant to section 454(6) [42 USCS § 654(6)]. No amount may be certified for collection under this subsection except the amount of the delinquency under a court or administrative order for support and upon a showing by the State that such State has made diligent and reasonable efforts to collect such amounts utilizing its own collection mechanisms, and upon an agreement that the State will reimburse the Secretary of the Treasury for any costs involved in making the collection. All reimbursements shall be credited to the appropriation accounts which bore all or part of the costs involved in making the collections. The Secretary after consultation with the Secretary of the Treasury may, by regulation, establish criteria for accepting amounts for collection and for making certification under this subsection including imposing such limitations on the frequency of making such certifications under this subsection.

Effective January 4, 1975, section 6305 of the Internal Revenue *Code* of 1954, as amended, (Code) was added by section 101(b)(1) of Public Law No., 93–647, 88 Stat. 2358, as follows:

§ 6305. Collection of certain liability.
(a) In general. Upon receiving a certification from the Secretary of Health, Education, and Welfare [Secretary of

**9.** The undisputed facts relating to the Galens' 1982 federal income taxes are contained in the affidavit of Eleanor Galen.

Health and Human Services], under section 452(b) of the Social Security Act [42 USCS § 652(b)] with respect to any individual, the Secretary shall assess and collect the amount certified by the Secretary of Health, Education, and Welfare [Secretary of Health and Human Services], in the same manner, with the same powers, and (except as provided in this section) subject to the same limitations as if such amount were a tax imposed by subtitle C the collection of which would be jeopardized by delay, except that—

(1) no interest or penalties shall be assessed or collected,

(2) for such purposes, paragraphs (4), (6), and (8) of section 6334(a) (relating to property exempt from levy) shall not apply,

(3) there shall be exempt from levy so much of the salary, wages, or other income of an individual as is being withheld therefrom in garnishment pursuant to a judgment entered by a court of competent jurisdiction for the support of his minor children, and

(4) in the case of the first assessment against an individual for delinquency under a court order against such individual for a particular person or persons, the collection shall be stayed for a period of 60 days immediately following notice and demand as described in section 6303.

(b) Review of assessments and collections. No court of the United States, whether established under article I or article III of the Constitution, shall have jurisdiction of any action, whether legal or equitable, brought to restrain or review the assessment and collection of amounts by the Secretary under subsection (a), nor shall any such assessment and collection be subject to review by the Secretary in any proceeding. This subsection does not preclude any legal, equitable, or administrative action against the State by an individual in any State court or before any State agency to determine his liability for any amount assessed against him and collected, or to

recover any such amount collected from him, under this section.

*Offset Against Federal Tax Overpayments*

Section 2331(a) of OBRA amended Part D of Title IV of the Social Security *Act* by adding section 464, 42 U.S.C. § 664:

§ 664. Collection of past-due support from Federal tax refunds

(a) Upon receiving notice from a State agency administering a plan approved under this part [42 USCS §§ 651 et seq.] that a named individual owes past-due support which has been assigned to such State pursuant to section 402(a)(26) [42 USCS § 602(a)(26)], the Secretary of the Treasury shall determine whether any amounts, as refunds of Federal taxes paid, are payable to such individual (regardless of whether such individual filed a tax return as a married or unmarried individual). If the Secretary of the Treasury finds that any such amount is payable, he shall withhold from such refunds an amount equal to the past-due support, and pay such amount to the State agency (together with notice of the individual's home address) for distribution in accordance with section 457(b)(3) [42 USCS § 657(b)(3)].

(b) The Secretary of the Treasury shall issue regulations, approved by the Secretary of Health and Human Services, prescribing the time or times at which states must submit notices of past-due support, the manner in which such notices must be submitted, and the necessary information that must be contained in or accompany the notices. The regulations shall specify the minimum amount of past-due support to which the offset procedure established by subsection (a) may be applied, and the fee that a State must pay to reimburse the Secretary of the Treasury for the full cost of applying the offset procedure, and provide that the Secretary of the Treasury will advise the Secretary of Health and Human Services, not less frequently than annually, of the States which have furnished notices of

past-due support under subsection (a), the number of cases in each State with respect to which such notices have been furnished, the amount of support sought to be collected under this subsection by each State, and the amount of such collections actually made in the case of each State.

(c) As used in this part [42 USCS §§ 651 et seq.] the term 'past-due support' means the amount of a delinquency, determined under a court order, or an order of an administrative process established under State law, for support and maintenance of a child, or of a child and the parent with whom the child is living.

Section 2331(c) of OBRA added subsection (c) to section 6402 of the *Code*, which now reads:

§ 6402. Authority to make credits or refunds.

(a) General rule.

In the case of any overpayment, the Secretary, within the applicable period of limitations, may credit the amount of such overpayment, including any interest allowed thereon, against any liability in respect of an internal revenue tax on the part of the person who made the overpayment and shall, subject to subsection (c), refund any balance to such person.

(b) Credits against estimated tax. The Secretary is authorized to prescribe regulations providing for the crediting against the estimated income tax for any taxable year of the amount determined by the taxpayer or the Secretary to be an overpayment of the income tax for a preceding taxable year.

(c) Offset of past-due support against overpayments. The amount of any over-payment to be refunded to the person making the overpayment shall be reduced by the amount of any past-due support (as defined in section 464(c) of the Social Security Act [42 USCS § 664(c)]) owed by that person of which the Secretary has been notified by a State in accordance with section 464 of the Social Security Act [42 USCS § 664]. The Secretary shall remit the amount by which the overpayment is so reduced to the State to which such support has been assigned and notify the person making the overpayment that so much of the overpayment as was necessary to satisfy his obligation for past-due support has been paid to the State. This subsection shall be applied to an overpayment prior to its being credited to a person's future liability for an internal revenue tax.

## MOOTNESS [10]

The Court rejects the contention that the return of the tax overpayments, including the EIC's, of the nonobligated plaintiffs moots their demands for injunctive and declaratory relief. The thrust of the nonobligated plaintiffs' claim is that *their* funds are being "unlawfully" intercepted to satisfy the debts of their obligated spouses. Return of the overpayments does not "preclude [this] challenge to ... [Treasury] policies that have had their impact and that continue in force unabated and unreviewed." *Super Tire Engineering Co. v. McCorkle,* 416 U.S. 115, 126–27, 94 S.Ct. 1694, 1700, 40 L.Ed.2d 1 (1974). The Court finds that there is a reasonable expectation that amounts due the nonobligated plaintiffs will be subjected to future interception [11] and that the intercepts are

---

**10.** The Court rejects the contention that the children named as plaintiffs in this action lack "standing." The legislative history relating to the EIC reveals that children, as well as their parents, are intended beneficiaries. *See* S.Rep. No. 94–36, 94th Cong., 1st Sess., *reprinted in* 1975 U.S.Code Cong. & Admin.News 54, 64.

**11.** In any event, the receipt of refunds by the nonobligated spouses does not determine the mootness issue. Treasury intercepted all of the overpayments and EIC's due all plaintiffs.

There is nothing in the record to suggest that Treasury intercepted more than was owed by the child support obligors. Therefore, once the nonobligated plaintiffs' shares of the overpayments and EIC's were returned, it must be assumed that additional child support remained owing by the obligated plaintiffs. Since there is no evidence or contention that these amounts have been paid, it is entirely reasonable to expect that Treasury will intercept plaintiffs' future tax overpayments and EIC's, thereby rendering the procedure capable of repetition, yet

of such short·duration as to be unreviewable prior to the return of the proceeds. Thus, the challenged intercept procedures are "capable of repetition, yet evading review," thereby presenting a live controversy. *See Roe v. Wade,* 410 U.S. 113, 124–25, 93 S.Ct. 705, 712, 35 L.Ed.2d 147 (1973) [natural termination of pregnancy does not moot action challenging abortion restrictions]; *Southern Pacific Terminal Co. v. I.C.C.,* 219 U.S. 498, 515, 31 S.Ct. 279, 283, 55 L.Ed. 310 (1911) [I.C.C. order rendered unreviewable due to brief duration].

## SUBJECT MATTER JURISDICTION

### A. *Subsection 6305(b) of the Code*

The state defendant contends that the action brought by the obligated plaintiffs [12] is barred by subsection 6305(b) of the Code, which precludes federal courts from restraining or reviewing "the assessment and collection of amounts by the Secretary [of the Treasury] under subsection [6305](a)...." Defendant insists that subsection 6305(b), various Treasury Regulations and the legislative histories of subsection 664(a) of the ·Act and subsection 6402(c) of the Code conclusively establish that the Court lacks jurisdiction to entertain the claims of the obligated plaintiffs for review of the new OBRA amendment intercept procedures. Defendant stresses that Code subsections 6305(a) and 6402(c) relate to the same legislative program—the recovery of delinquent child-support obligations—and that subsection 6402(c) was enacted as a more efficient collection procedure than that previously established by subsection 6305(a). Finally, defendant contends that the subsection 6402(c) procedure for intercepting federal tax overpayments for application to past-due support obligations creates a mechanism for the "collection" of a "tax," which subsection 6305(b) and the Anti-Injunction Act place beyond the jurisdiction of the federal courts.

evading review. *Compare Rucker v. Secretary of the Treasury,* 555 F.Supp. 1051, 1053 (D.Colo. 1983) [no continuing injury or controversy where nonobligated spouse receives share of withheld earnings and EIC].

Analysis of these statutes is subject to the established rules of statutory construction, which must begin with the statutory language itself. "Absent a clear indication of ·legislative intent to the contrary, the statutory language controls its construction." *Ford Motor Credit Co. v. Cenance,* 452 U.S. 155, 158 n. 3, 101 S.Ct. 2239, 2241 n. 3, 68 L.Ed.2d 744 (1981). *See Drysdale v. Spirito,* 689 F.2d 252, 256 (1st Cir.1982).

By its own terms, the jurisdictional limitation in subsection 6305(b) applies only to the "assessment and collection of amounts ·... *under subsection [6305](a)....*" (*Emphasis added.*) Neither subsection 664(a) nor subsection 6402(c) is cross-referenced to Code subsections 6305(a) or (b). Moreover, it is clear that subsections 664(a) and 6402(c) establish a self-defined method for *offsetting* past due support obligations, which is independent of the assessment and collection of obligations *under section 6305(a).* In order to initiate the assessment and collection procedure, a state must make a showing to the Secretary of Health and Human Services [HHS] that it has made unsuccessful, diligent and reasonable efforts to collect the past due obligation. The Secretary of HHS then certifies to Treasury that the amount is due. ·Subsection 6305(a) then places IRS in the role of a "collector" authorized to reach directly *any* lienable asset of the child-support obligor. Once an individual has been "certified" to Treasury as owing past-due support, IRS is required to "assess and collect the amount ... [of such support]· in the same manner, with the same powers, and ... subject to the same limitations as if such amounts were ... [an employment] tax ... the collection of which would be jeopardized by delay...." 26 U.S.C. § 6305(a). To expedite the collection of past-due support, IRS is empowered to collect by levy in the event of a failure or refusal to pay. 26 U.S.C. § 6305(a)(2) & (3). *See* 26 C.F.R. § 301.-6305–1(b)(4)(i).

**12.** Defendants concede that section 6305 does not apply to the nonobligated plaintiffs. *See* 42 U.S.C. § 664(a); 26 U.S.C. § 6402(c).

By way of contrast, neither subsection 664(a) of the Act nor subsection 6402(c) of the Code speaks in terms of "assessment and collection," authorizes any of the enforcement mechanisms available under Code subsection 6305(a) or requires the showing required under subsection 652(b). Rather, subsections 664(a) and 6402(c) direct the Secretary of the Treasury to make *offsets* upon receipt of mere *notice from a state agency* that amounts are due. Under Act section 664, Treasury merely determines "whether any amounts, as refunds of Federal taxes paid, are payable to [child support obligors] ..., withhold[ing] from such refunds an amount equal to the past-due support ... and pay[ing] such amounts to the [appropriate] state agency...." All amounts offset under Act section 664 and Code subsection 6402(c) are federal tax *overpayments already in the possession* of the Government. Under neither provision is Treasury authorized to collect child support obligations from *other* assets of the child support obligor. Simply put, as the "stakeholder," Treasury merely transfers, from one account to another, funds already in its possession. The conclusion that the two complementary statutory schemes establish *different* and *independent* methods of pursuing the same purpose finds further support in the Treasury regulation which states that sections 6305 and 6402 "may be used separately or in conjunction with each other." 26 C.F.R. § 304.6402–1(a)(1).[13]

A review and comparison of the two statutory schemes not only demonstrates their independence, but also suggests why the jurisdictional limitation of subsection 6305(b) may have been viewed as unneces-

sary with respect to the new offset procedure.

In view of the greater intrusiveness of the collection methods authorized under the "assessment and collection" procedures prescribed by subsection 6305(a), it is not surprising that Congress established safeguards (e.g., a requirement that states first undertake other reasonable efforts to recover past-due support obligations) to prevent unnecessary recourse to those more intrusive "assessment and collection" procedures. Similar safeguards may well have been considered both unwise and unnecessary where the states merely request the interception of a federal tax refund due a child-support obligor. Because subsection 6305(a) creates cumbersome procedural requisites to the initiation of its jeopardy-assessment type collection procedures, it seems entirely reasonable to assume that Congress established the new OBRA offset procedures, containing no such time-consuming procedures, in order to minimize the risk that the states would lose the "bird in hand" while searching for the "bird in the bush."

This rationale would explain why Congress has ordained that the assessment and collection of child support obligations under subsection 6305(a) is to be unfettered by precollection litigation. Section 6305(b) and the Anti-Injunction Act, 26 U.S.C. § 7421(a), which bars any suit "for the purpose of restraining the assessment or collection of any tax," both serve essentially the same purpose. *See also* Declaratory Judgment Act, 28 U.S.C. § 2201.

The manifest purpose of [the Anti-Injunction Act] is to permit the United States to assess and collect taxes alleged to be due without judicial intervention,

---

**13.** The defendants argue that Treasury's power to intercept tax overpayments existed under Code subsection 6305(a), independently of Code subsection 6402(c). This argument simply reinforces the conclusion that the new and the old child-support collection procedures are complementary in nature. Even assuming that Treasury was empowered to offset under Code section 6305, there remained the requirement under that section that the state first attempt to collect the support obligation through its own

enforcement mechanisms before invoking the collection authority of the IRS. *See* 42 U.S.C. § 652(b). Similarly, collections under subsection 6305(a) are undertaken on an individual basis. *See* Committee Report at 787–88. Section 664 of the Act and subsection 6402(c) of the Code were designed to eliminate unnecessary recourse to the more cumbersome and costly jeopardy-type assessment procedures previously established.

and to require that the legal right to the disputed sums be determined in a suit for refund. In this manner the United States is assured a prompt collection of its lawful revenue.

*Enochs v. Williams Packing & Navigation·Co., Inc.,* 370 U.S. 1, 7, 82 S.Ct. 1125, 1129, 8 L.Ed.2d 292 (1962). The Congress has deemed it necessary and appropriate to impose similar jurisdictional limitations upon federal judicial intervention in the *collection* of child-support obligations; *appropriate* because "prompt collection" of child support obligations under Code § 6305 was recognized as an important consideration in minimizing the fiscal drain upon inadequate governmental resources, *see* S.Rep. No. 93–1356, 93d Cong., 2d Sess., *reprinted in* 1974 U.S.Code Cong. & Admin.News 8133, 8153–8154 (Senate Report); and *necessary* because the Anti-Injunction Act does not purport to bar injunctive relief against nontax collections. Whereas litigation cannot lead to the dissipation of the asset (the right to a refund of money already *in the possession of the IRS*) which is the subject of the new OBRA offset procedure.

Defendants correctly observe that Code section 6305 and Act section 664 were intended to effectuate the same legislative policy, that of assisting the states in collecting past-due child support obligations. Indeed, the legislative history of Act section 664 reveals that the power of the IRS to collect past-due support under Code section 6305 would be "amplified" by the intercept procedure established by subsection 6402(c) of the Code. *See* S.Rep. No. 97–139, 97th Cong., 1st Sess., *reprinted in* 1981 U.S. Code Cong. & Admin.News 396, 787–88 (Committee Report). But though the two procedures complement each other, it does not follow that they are or should be subject to identical procedural limitations. Rather, the Court's review of the two statutory schemes demonstrates that each creates a procedure which is suited to that scheme. Nothing in the statutory language, the Treasury Regulations or relevant legislative history suggests that these statutes were intended to do anything other than establish two different, albeit complementary, procedures for the collection of past-due child support. *Accord Marcello v. Regan,* 574 F.Supp. 586, 593–94 (D.R.I. 1983); *Nelson v. Regan,* 560 F.Supp. 1101, 1106 (D.Conn.1983), *aff'd,* 731 F.2d 105 (2d Cir., 1984); *Sorenson v. Secretary of the Treasury,* 557 F.Supp. 729, 733 (W.D. Wash.1982). The Court cannot engraft onto one of those statutory schemes a jurisdictional rule which *by its terms* applies only to the other scheme.

■ Therefore, the Court finds that the jurisdictional restrictions in subsection 6305(b) do not bar this Court from reviewing or restraining the interception of tax overpayments under Code section 6402.

### B. *Anti-Injunction Act and Declaratory Judgment Act*

Central to the defendants' motions to dismiss is their characterization of plaintiffs' suit as a tax case, for if that characterization were correct the present action would confront the substantial legal obstacles attending tax cases generally, *see Sorenson v. Secretary of the Treasury,* 557 F.Supp. at 732, including the Anti-Injunction Act, 26 U.S.C. § 7421(a), prohibiting suits "for the purpose of restraining the assessment or collection of any tax," *see Enochs v. Williams Packing & Navigation· Co., Inc.,* 370 U.S. at 6–7, 82 S.Ct. at 1129. Similarly, suits involving federal taxes are excepted from the Declaratory Judgment Act, 28 U.S.C. § 2201. The jurisdictional limitations in both statutes are given broad sway by the courts. *See Bob Jones University v. Simon,* 416 U.S. 725, 732 n. 7, 94 S.Ct. 2038, 2044 n. 7, 40 L.Ed.2d 496 (1974). *But see South Carolina v. Regan,* — U.S. —, —, 104 S.Ct. 1107, 1113, 79 L.Ed.2d 372 (1984) [Anti-Injunction Act does not apply to actions where Congress has not provided alternative remedy].

■ The Court rejects defendants' characterization of this action as a tax case. The collection of a child support obligation is not a tax collection, since child support

obligations are not taxes. Senate Report at 8153. Code § 6305 and Act § 664 are entitled "Collection of certain liability" and "Collection of past-due support from federal tax refunds," respectively, and subsection 6402(c) is entitled "Offset of past-due support against overpayments." Similarly, Code § 6305 provides for the "assessment and collection of *amounts.*" Although these "amounts" may be collected "in the same manner" as is an employment tax, it does not follow that the collection of past-due child support constitutes the collection of a *tax.* This view is buttressed by the Treasury Regulation which provides that tax overpayments available for offset under subsection 6402(c) are first applied to any outstanding tax liability and then to past-due support obligations, 26 C.F.R. § 304.6402–1(d)(1).

More importantly, had Congress intended that these new tax overpayment offset procedures for the collection of child-support obligations were to be considered tax collection procedures, there would have been no need to enact subsection 6305(b), since the Anti-Injunction Act itself bars injunctive relief against the assessment or collection of a tax. Section 6305 does not establish a mechanism for the assessment and collection of a "tax," but rather for the assessment and collection of "certain [child support] liability," whereas the Code contains numerous provisions which demonstrate that when Congress intends to impose a "tax" it does so expressly, *see, e.g.,* 26 U.S.C. §§ 1, 11, 511(a), 802(a), 871(a)(1), 2001, 3101(a), 3201, 4041(a) & 5001(a)(1).

Of course, Code subsection 6402(c) and Act section 664, not Code section 6305, establish the procedures actually employed in this case, and these sections do not come into play until *after* taxes have been *collected* and all existing tax liabilities have been satisfied. Neither section 6305 nor subsection 6402(c) provides for the collection of a "tax"; and the compatible rationales of the Anti-Injunction Act and of the jurisdictional bar imposed by subsection 6305(b) are inapposite in the context of an offset of tax *overpayments* under Code subsection 6402(c).

Accordingly, neither the Anti-Injunction Act nor the Declaratory Judgment Act bars the present action.

## MERITS

### A. *Earned Income Credits*

Plaintiffs contend that no portion of the EIC is subject to offset.[14] Specifically, plaintiff's contend that an EIC is not an "overpayment" within the meaning of Code subsection 6402(c). Plaintiffs argue that an EIC is primarily a welfare benefit intended to provide financial assistance to poor families and that Congress could not have intended to permit diversion of an EIC under the offset program. In support of their contention that an EIC is not a federal tax *refund* and that EIC's are therefore beyond the reach of both subsections 664(a) and 6402(c), plaintiffs rely on the language of Act subsection 664(a), which authorizes Treasury to withhold "refunds of Federal taxes paid."

These arguments are not persuasive. Subsection 6401(b) of the Code provides in part:

> (b) Excessive credits. If the amount allowable as credits under sections 31 (relating to tax withheld on wages, ...) and 39 (relating to certain uses of gasoline, ...), and 43 (relating to earned income credit), exceeds the tax imposed by subtitle A..., the amount of such excess shall be considered an overpayment....

Subsection 6401(b) thus makes clear that, as used in subsection 6402(c), which authorizes offsets against overpayments, the term "overpayment" includes any EIC. It is a well settled rule of statutory interpretation that where the language is plain and

**14.** In the context of tax *overpayments,* spouses filing a joint return have separate interests in the overpayment. *See Gens v. United States,* 673 F.2d 366 (Ct.Cl.1982); *Rosen v. United States,* 397 F.Supp. 342, 344 (E.D.Pa.1975). By promulgating procedures for, *see* n. 7, *supra,* and by, in fact, returning the nonobligated plaintiff's share of the tax overpayment, including the EIC, defendants have conceded the nonobligated plaintiffs' interests in their EIC's.

·admits of no more than one meaning, the duty of interpretation does not arise. *Caminetti v. United States,* 242 U.S. 470, 485, 37 S.Ct. 192, 194, 61 L.Ed. 442 (1917).

Plaintiffs' reliance on the district court's analysis of Code subsection 6401(b) in *Nelson v. Regan, supra,* recently affirmed by the Second Circuit Court of Appeals, is misplaced. The district court in *Nelson* reasoned that the term "overpayment," which is broadly defined in subsection 6401(b), is limited by subsection 6402(c), which includes the phrase "overpayment to be refunded to the person making the overpayment." The *Nelson* court found that this phrase and the less inclusive language used in section 664, together with the fact that subsections 664(a) and 6402(c) are OBRA enactments, militate in favor of excluding EIC's from the broad reach of subsection 6401(b). *Id.* 560 F.Supp. at 1110. But this argument does not explain away the express language of subsection 6401(b) itself and its close contextual relationship to section 6402. A careful analysis of *Nelson* reveals that the court's real reason for reading EIC's out of the intercept procedure was predicated on its perception that the public policy underlying the creation of the EIC as a further form of relief to low-income families, *see id.* at 1111, should prevail over the new intercept procedures enacted as part of OBRA.

Of course, congressional creation of the EIC does implement an important social policy. But there is absolutely nothing in either the express language or the legislative histories of subsections 664(a) and 6402(c) which would indicate that an EIC is exempt from the OBRA intercept procedures. Additionally, as one court has noted, "[i]t is perfectly consistent that Congress would consider the payment of past-due child support more important than the protection of an earned income credit." *Sorenson v. Secretary of the Treasury,* 557 F.Supp. at 734.

■ Accordingly, the Court finds that the EIC's of the obligated plaintiffs are subject to interception and transfer to the state under subsections 664(a) and 6402(c).

**B.** *Due Process*

As the only notice provided *nonobligated* spouses is sent by Treasury following the actual offset,[15] the central issue is whether the present Treasury notice and refund procedures comport with the requirements of procedural due process.

■ It is well settled that any significant deprivation of property by governmental action must be attended by notice and an opportunity to be heard. *Mullane v. Central Hanover Trust Co.,* 339 U.S. 306, 313, 70 S.Ct. 652, 656, 94 L.Ed. 865 (1950). As long as the deprivation is not *de minimis,* its gravity is irrelevant in determining whether due process must be accorded. *Sniadach v. Family Finance Corp.,* 395 U.S. 337, 342, 89 S.Ct. 1820, 1823, 23 L.Ed.2d 349 (1969) (Harlan, J. concurring). Thus, "a temporary, nonfinal deprivation of property is nonetheless a 'deprivation' in the terms of the Fourteenth Amendment." *Fuentes v. Shevin,* 407 U.S. 67, 85, 92 S.Ct. 1983, 1996, 32 L.Ed.2d 556 (1972) (citations omitted). There can be no doubt that Treasury's interception of a nonobligated spouse's share of a tax overpayment and its transfer to the state in satisfaction of the delinquent child support obligations of the obligated spouse is a significant deprivation of property, implicating due process considerations. *Accord, Marcello v. Regan,* 574 F.Supp. at 595; *Nelson v. Regan,* 560 F.Supp. at 1106; *Sorenson v. Secretary of the Treasury,* 557 F.Supp. at 737.

■ The requirements as to the timing, content and nature of the notice and hearing depend upon the circumstances surrounding the particular governmental conduct and must reflect an accommodation of the competing interests involved. *Mathews v. Eldridge,* 424 U.S. 319, 334, 96 S.Ct. 893,

---

**15.** It appears from the federal defendants' 'Supplemental Memorandum' and from the supporting affidavit of Frederick F. Perdue, Director, Returns Processing and Accounting Division, IRS, that the IRS notice is automatically sent at the time of the actual offset. The deprivation thus occurs prior to the receipt of notice by the nonobligated spouse.

902, 47 L.Ed.2d 18 (1976); *Cafeteria Workers v. McElroy,* 367 U.S. 886, 895, 81 S.Ct. 1743, 1748, 6 L.Ed.2d 1230 (1961).

The defendants concede that under the new OBRA offset procedures nonobligated spouses are neither provided notice of the pending offset nor afforded any predeprivation protection. Under the procedures adopted by the Maine DHS,[16] past-due child support *obligors* receive notice of the intended offset and of the administrative procedures available to challenge the DHS determination.[17] DHS does not request information as to the child-support obligor's marital status or as to whether a joint return was or will be filed.[18] The master debtor list submitted annually by the State of Maine to Treasury contains only the names of child support *obligors* and the amount of past-due support owed by each.

The present IRS notice advises spouses of the amount of the tax overpayment which has been offset against the past-due child support obligation of the obligated spouse and informs nonobligated spouses in general that they may object to having their share of the overpayment so applied. The notice states that the IRS will return the nonobligated spouse's share of the tax overpayment and EIC, with interest, within six to eight weeks of the receipt of an Amended Form 1040X tax return. Questions about the child support obligation are directed to the appropriate state agency. Questions about the offset itself are to be directed to the IRS.

The entire notice fills less than one page. That portion of the notice to nonobligated spouses identifying their right to object to the interception of their share of the over-

payment and instructing them about the refund procedures consists of three short paragraphs on the left side of the page, set off in a box delineated by thick black lines. Typed above the box in capital letters is the advice: "OVERPAID TAX APPLIED TO PAST–DUE SUPPORT OBLIGATION." Notice of the offset and of the refund procedures is provided in separate paragraphs in clear, concise, straightforward language.

■ Although due process does not require the best conceivable notice, the notice provided must be "reasonably calculated, under all the circumstances, to apprise [nonobligated spouses] of the [government] action and afford them an opportunity to present their objections." *Mullane v. Central Hanover Trust Co.,* 339 U.S. at 314, 70 S.Ct. at 657. *Compare Greene v. Lindsey,* 456 U.S. 444, 102 S.Ct. 1874, 72 L.Ed.2d 249 (1982) [posting notice of eviction action on door of apartment in public housing unit insufficient to satisfy due process notice requirement]; *Memphis Light, Gas and Water Division v. Craft,* 436 U.S. 1, 14, 15 n. 15, 98 S.Ct. 1554, 1562, 1563 n. 15, 56 L.Ed.2d 30 (1978) [notice of possible termination of utility services must be clear and concise, as many utility customers may be unsophisticated].

■ Although the format of the present IRS notice is sufficient to "reasonably ... convey the required information," *Mullane v. Central Hanover Trust Co.,* 399 U.S. at 314, 70 S.Ct. at 657, *see LeBeau v. Spirito,* 703 F.2d 639, 644–45 (1st Cir.1983) [notice of across-the-board reduction in welfare

---

**16.** *See* "Maine Child Support Enforcement Manual;" Ch. IV, § A, pp. 6–11 (Maine DHS).

**17.** Child support *obligors* receive two separate mailings from DHS. The first notice contains a demand for payment, indicating the amount of delinquent support due and requesting either immediate payment of the entire amount or payment on the basis of the obligor's ability to pay. The obligor is requested to contact DHS. The second mailing informs the child support obligor of the intended intercept and of the availability of administrative review as to specific issues arising out of the DHS determination.

Plaintiffs do not challenge the adequacy of these notices as to *obligated* spouses. *See Marcello v. Regan,* 574 F.Supp. at 596–597 [due process requires that notice sent to obligated spouse contain list of possible defenses]. *See also Nelson v. Regan,* 560 F.Supp. at 1107 [same].

**18.** *See* Defendant Michael R. Petit's Memorandum; Supporting Affidavit of Colburn W. Jackson, Maine DHS.

benefits may be phrased in more generalized terms than where reduction in benefits is accomplished on an individual basis], the notice does not afford any predeprivation protection to nonobligated spouses. The IRS post-deprivation notice is the only means through which a nonobligated spouse is informed of the offset and of the refund procedures. The IRS notice is not addressed to individual nonobligated spouses, and, except for the routine refund procedures outlined in the body of the notice, a nonobligated spouse is not alerted as to the amount of his or her overpayment which has been withheld. From the standpoint of the nonobligated spouse the potential for confusion and the resultant risk of failure to respond [19] to the notice is exacerbated by the unexpectedness of the Treasury offset.

It is reasonable to assume that many AFDC program families count on the *timing* of their receipt of their tax refunds and EIC's, often committing the entire amount in advance of its receipt. *See Marcello v. Regan*, 574 F.Supp. at 596. Even with the knowledge that the obligated spouse's share of the tax overpayment will be subject to offset by Treasury, the unexpected interception and diversion of the nonobligated spouse's share presents a potentially disruptive event. Fundamental fairness is the underlying predicate of due process, and it is fundamentally *unfair* for Treasury unilaterally to intercept the refunds of nonobligated spouses without at least providing notice of the intended deprivation.

The defendants contend that predeprivation notice to nonobligated spouses would impose an unwarranted administrative burden. As previously indicated, the information submitted by DHS to HHS and maintained by the IRS in its Debtor Master File includes the names of child-support *obligors* only. Treasury argues that it could not identify nonobligated spouses from the information contained in its files. Similarly, Treasury argues that it would be extremely difficult to identify *nonobligated* spouses from the information contained on joint tax returns, because there is nothing to differentiate the joint returns of child-support obligors from those of joint-return filing taxpayers owing no child support. According to the federal defendants, the returns are manually processed at ten IRS service centers and fed into IRS computers. Once processing is completed the computerized data are electronically scanned to match the names contained in the Debtor Master File with the corresponding returns. The offset is then effected and the notice sent to the obligated spouse. Except for the initial processing, the entire process is automated.[20]

The federal defendants argue that it would be equally burdensome to impose a requirement that Treasury implement a pre-offset allocation procedure. According to the defendants, pre-offset allocation would require extensive programming changes, resulting in substantial costs and the possibility of creating delays even greater than the present delays in processing and returning the nonobligated spouse's share of the tax overpayments.[21]

---

**19.** To the extent that the calculations relied upon by the federal defendants (offered to suggest that many nonobligated spouses do not want a refund, *see* n. 21) show anything, it is that the nature and timing of the IRS notice may indeed create or at least heighten the risk of failure to respond.

**20.** Defendants argue that, even assuming Treasury's ability to identify nonobligated spouses, no uniform, cost effective procedures could be developed on a continuing basis. An obligated spouse who files a joint return one year may choose not to do so in later years. Conversely, a child-support obligor who has not been filing a joint return may file a joint return in some future year. Similarly, a nonobligated spouse

who has had withheld earnings intercepted by Treasury one year may not have any earnings in the next year.

The defendants maintain that the lack of consistency would result in repetitive, burdensome and expensive procedures. *See* n. 21 *infra*.

**21.** The computerization of the offset procedure has reduced the cost per offset from $11 to $4.20. Pre-offset allocation would raise the cost per offset to above $11. According to defendant Regan, the present computerized procedure would have to be reprogrammed to reject all offsets relating to jointly filed returns. A new list would have to be generated, sent to all ten service centers, and would then require manual extraction of relevant tax returns from the files.

But the arguments presented by the federal defendants do not suggest that it would be impracticable to improve the notices provided by the state defendant. The second notice sent by DHS to child support obligors easily could include a warning that the IRS may intercept the share of any refunds which are due nonobligated spouses filing joint returns with child support obligors. And there is no contention that it would be impracticable to include advice as to the right to obtain and the procedures for obtaining the nonobligated spouse's refund. Perhaps such supplementation of the DHS notice could be directed to nonobligated spouses *in general*[22] and could provide the same general information as that contained in the present IRS notice.

The nonobligated spouse could be informed that the IRS will provide a separate notice restating the procedures for obtaining a refund. Recognizing that DHS has no authority to allocate or provide refunds, the notice might direct all questions pertaining to the offset and refund procedures to the IRS.

Such notice would obviate much of the unfairness inherent in the current notice,[23] while placing a minimal burden on any of the defendants.[24] Modifications to the present DHS notice would not disrupt in any way the existing state procedures for the collection of past-due support or the administrative review procedures available to child support obligors.[25] Given the

To process the refunds, the IRS would have to request additional information from the nonobligated spouse which would then have to be processed through IRS computers. This modified procedure would affect all joint returns, whether or not the nonobligated spouse had earnings withheld or was entitled to a refund.

Defendant Regan points out that a study of offsets for 1981 reveals that of 265,000 offsets 44.5 percent involved joint returns. By comparing figures for offsets between January and November, 1983, when only one percent of the nearly 335,000 offsets were adjusted as a result of requests for refunds from nonobligated spouses, defendant Regan argues that the net impact of reprogramming for pre-offset allocation would delay processing refunds on more than 125,000 returns to locate approximately 3,000 nonobligated spouses who might request a refund.

At least one other court has considered the question of pre-offset allocation and found "no benefit to be gained" from requiring pre-offset allocation. Predeprivation notice from the state, together with the notice sent by the IRS, was held to satisfy the requirements of due process. *Nelson v. Regan,* "Ruling on Remedy and Final Order," at p. 7 (D.Conn. April 22, 1983).

22. This would alleviate the obvious difficulties in ascertaining the marital status of obligated spouses, as well as the names of their spouses.

23. The concomitant benefits of predeprivation notice to nonobligated spouses are obvious. A dual system of notice would assure that nonobligated spouses are adequately informed of their rights to, and the procedures for obtaining, a return of their share of the tax overpayment. Questions concerning Treasury's offset practice and procedure could be addressed in a timely manner, thereby affording nonobligated spouses the information necessary to safeguard their

interests and to comply with the requirements for obtaining a refund. Moreover, a nonobligated spouse may elect to file an individual return and thereby avoid the intercept of his or her share. While this would mean losing any EIC, the nonobligated spouse may decide that loss of an EIC is preferable to awaiting return of both the tax refund and any EIC. The suggested notice might also afford nonobligated plaintiffs the opportunity to "file an application for a refund ... *at the time of* filing a joint return," *Nelson v. Regan,* Ruling on Remedy and Final Order, at p. 6, thereby expediting the refund procedure.

24. Requiring the state to modify its present notice does not implicate Eleventh Amendment concerns. The Eleventh Amendment does not prohibit all orders which would entail some state expense, especially *where the costs to the state are de minimus. See Quern v. Jordan,* 440 U.S. 332, 348, 99 S.Ct. 1139, 1149, 59 L.Ed.2d 358 (1979) [requiring state to provide notice apprising persons of the existence of state administrative procedures for determining eligibility for past benefits is not violative of the Eleventh Amendment].

25. An obligated spouse who disputes the underlying support obligation is entitled to review by an administrative hearing officer. *See* 19 M.R.S.A. § 491, *et seq.* At the hearing the alleged obligor may call and cross-examine witnesses and may present any other relevant evidence bearing on the claim. A determination is then made as to whether the alleged obligor's name should be removed from the offset list. An adverse agency determination may be appealed to the Superior Court under 19 M.R.S.A. § 516. If no action is taken, the alleged obligor is sent a notice confirming that his or her name has been placed on the offset list, which will be sent to HHS and then to Treasury for collection.

state's significant interest in the federal intercept program, modification of its present notice procedure to accommodate the affected interests of nonobligated spouses is both manifestly reasonable and fair.[26]

Accordingly, in view of the competing interests involved, the Court cannot summarily conclude that the current notice procedure satisfies the requirements of procedural due process. *See Marcello v. Regan*, 574 F.Supp. at 599 [state notice must advise nonobligated spouse, in general terms, of right to a refund]; *see also Nelson v. Regan*, 560 F.Supp. at 1107 [requiring predeprivation notice].

Moreover, though the current record suggests that the state defendant, as opposed to the federal defendants, is in a better position to provide notice, it does not follow that the federal defendants are entitled to summary judgment. In the Court's view, there remains a material dispute as to whether Treasury itself should provide predeprivation notice to nonobligated spouses. Moreover, since Treasury promulgates the procedures and guidelines for state participation in the offset program and since Treasury in fact executes the offset, Treasury's failure to require that the states provide a predeprivation notice may itself violate due process. In short, as partners in the collection process, the Maine DHS *and* Treasury should devise a notice procedure which will satisfy the requirements of due process.[27]

The state *and* federal governments have a substantial interest in the offset procedure. Collection of past-due child support is a legitimate governmental concern and an overly burdensome collection procedure could frustrate the underlying purpose of the offset mechanism. Similarly, nonobligated spouses have a legitimate interest in obtaining a prompt refund of their tax overpayments. The present notice procedures fall short of safeguarding the interests of nonobligated spouses.

Accordingly, and for the reasons set forth above, the defendants' motions to dismiss, treated as motions for summary judgment, are hereby *GRANTED* on plaintiffs' claims for: (1) a judicial declaration that it is unlawful to apply the offset procedures against the obligated plaintiffs' EIC's; (2) a permanent injunction restraining the federal defendants' interception of the obligated plaintiffs' EIC's; and (3) a refund of the EIC's previously intercepted. In all other respects defendants' motions are *DENIED*.

---

**26.** As one court has noted, "[t]he intercept program gives the state the opportunity to recoup—with a minimum of effort—the amount of assistance payments which it was compelled to advance because an obligated spouse and/or parent has defaulted." *Marcello v. Regan*, 574 F.Supp. at 597.

**27.** The nonobligated plaintiffs also contend that due process requires an administrative hearing at which they can challenge Treasury's interception of their share of the tax overpayments. Because the Court finds that the defendants' notice procedure does not comport with due process, the Court will not address this issue.